[No. B144333. Second Dist., Div. Five. May 21, 2001.]

TRAFFICSCHOOLONLINE, INC., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
FREDERICK K. OHLRICH, as Former Administrator, etc., et al., Real
Parties in Interest.

**COUNSEL**

Merrill, Arnone & Jones, William J. Arnone, Jr., Richard C. O'Hare and Marlon V. Young for Petitioner.

Franscell, Strickland, Roberts & Lawrence, Cindy S. Lee, and Jin S. Choi for Respondent and for Real Parties in Interest.

**OPINION**

**TURNER, P. J.—**

## I. INTRODUCTION

Plaintiff, TrafficSchoolOnline, Inc. (plaintiff), has filed a mandate petition seeking to set aside the respondent court's order of August 18, 2000, transferring the present matter to this court pursuant to Code of Civil Procedure section 396. Plaintiff contends that the respondent court had no authority to transfer a case to the Court of Appeal pursuant to Code of Civil Procedure section 396. We conclude first that the respondent court could not, in compliance with Code of Civil Procedure section 396, transfer this case from itself to the California Court of Appeal. In this regard, we conclude that the superior court is not vested with the authority by Code of Civil Procedure section 396 to transfer a case to the Court of Appeal or the Supreme Court. Further, we conclude that respondent court had subject matter jurisdiction to consider the merits of plaintiff's claims concerning a proposed home study traffic school program. Accordingly, we issue our peremptory writ of mandate.

## II. PROCEDURAL HISTORY

On September 3, 1999, plaintiff filed its amended petition for writ of mandate in Los Angeles Superior Court. Named as defendants were: Frederick K. Ohlrich, the former Court Administrator of the Municipal Court of Los Angeles County for the Los Angeles Judicial District; the Home Study Review Committee of the Los Angeles Judicial District (the committee); and the Municipal Court of the Los Angeles Judicial District (the Los Angeles Judicial District) (defendant(s)). The amended petition alleged that Vehicle Code section 41501 authorized courts to dismiss traffics citations upon attendance at a "court-approved program of driving instruction." The Los Angeles Judicial District exercised its power to determine which programs would be approved by adopting the Home Safety Traffic Institute Policy Statement and Selection Procedures (the policy statement). Additionally, the Los Angeles Judicial District adopted a Home Study Traffic School Criteria (the criteria). Pursuant to the policy statement, the committee was to review home study courses for traffic school instruction and then make recommendations to Mr. Ohlrich. After the committee made it recommendations, pursuant to the policy statement and the criteria, Mr. Ohlrich was to publish a list of home study courses which were deemed to be approved by a Los Angeles Judicial District. Paragraph 10 of the policy statement states, "All programs that meet the standards as set forth by the court shall be approved . . . ."

The amended petition alleged that all of the aforementioned defendants had a clear, present, and ministerial duty to apply the policy statement and criteria when reviewing a traffic school program for court approval. The amended petition alleged that Mr. Ohlrich, the committee, and the Los Angeles Judicial District violated their ministerial duty by failing to follow the published procedures for the following reasons. It was alleged that the committee had a duty pursuant to the criteria to review each proposed home study program. Paragraph II.A of the criteria, it was alleged, required the committee to examine each program to determine whether it met certain specified requirements imposed by the Department of Motor Vehicles. According to the amended petition: no member of the committee examined plaintiff's online traffic school program; the committee relegated the task of reviewing plaintiff's program to a young adult; and the young adult was unqualified to evaluate traffic school curricula and Internet usage. The committee thereupon made a "flawed recommendation" concerning plaintiff's program. Mr. Ohlrich, it was alleged, accepted the committee's recommendation and "issued a denial letter to [plaintiff]."

A separate breach of the policy statement and criteria occurred because the young adult who reviewed plaintiff's online home study program failed to fully evaluate it. Plaintiff's software tracks the segments of its program which had been reviewed by a participant. The committee's reviewer visited plaintiff's web site only once, then completed only certain segments of the program before exiting. According to the amended petition, the "cursory review" by an unqualified reviewer did not comply with the criteria.

Plaintiff further alleged that there had been inconsistent application of the criteria among various home study programs. At first, defendants refused to approve the program because of "time barriers" within plaintiff's online computer program. These "time barriers" required that persons taking the online course spend a certain minimal amount time on each of various subject areas. According to plaintiff, defendants had approved other programs that contain time barriers of the same type present in this case. It was alleged that the inconsistent application of the criteria was arbitrary, capricious, contrary to public policy, or procedurally unfair.

Upon receiving this initial rejection based upon the single issue of "time barriers," plaintiff sought reevaluation of its online home study traffic school program. Plaintiff explained the function of the time barrier feature in its written reconsideration request. According to the amended petition, reconsideration was granted but in fact no additional review was conducted. When conducting the reevaluation, no specific findings were made nor was there any discussion of the initial ground for denying the certification request. The

ground given for denying certification was that plaintiff's online home study traffic school program "failed to comply with the English Language and validation requirements." On these grounds, plaintiff alleged that defendants had breached their ministerial duty and abused their discretion in refusing to permit plaintiff to be a home traffic school provider.

After the filing of the amended petition, the Los Angeles Municipal and Superior Courts were unified. On June 9, 2000, former Presiding Judge Victor E. Chavez of Los Angeles Superior Court noted that Mr. Ohlrich was the former "Executive Officer" of the municipal court. As a result, former Presiding Judge Chavez issued the following order: "The Court therefore, recuses itself from hearing these matters. [¶] I am hereby requesting that the Chief Justice appoint an out . . . of county judge to hear this case and the related cases."[1]

On June 20, 2000, pursuant to an order of the Chief Justice of the California Supreme Court, an Orange County Superior Court judge was assigned to conduct further proceedings in this case. The case was assigned at different times to two separate judges. The assignment to the first judge indicated that she was "assigned as a judge of the Los Angeles Superior Court by the Chairperson of the Judicial Council." Both of the judges at the time of the assignment were Orange County Superior Court judges, although they were sitting as Los Angeles Superior Court judges. The minute orders prepared after the transfer from Los Angeles Superior Court while the case was pending before the two judges referred to: "SUPERIOR COURT OF CALIFORNIA [¶] COUNTY OF LOS ANGELES." A certification of service of a minute order served after the case file arrived in Orange County Superior Court contains the following notation: "John A. Clarke, County Clerk and Clerk of the Superior Court in and for the County of Los Angeles."

Defendants moved to transfer the present case to the Court of Appeal, Second Appellate District. On August 18, 2000, the respondent court transferred this case to this court under the authority of Code of Civil Procedure section 396. The respondent court's ruling was as follows: "[T]his petition . . . [c]alls for a writ to be issued against the court administrator of the municipal court. However, in light of the unification, it is now the superior court. And it also calls for a writ against—it's the municipal court of California, Los Angeles Judicial District, and now the superior court. [¶] Plaintiff concedes . . . the court's authority to delegate its power to the

---

[1]The parties have not addressed the question of whether it is legally permissible for a presiding judge to recuse an entire superior court. Further, the parties have not addressed the issue of whether it was *mandatory* that an out-of-county judge be assigned to handle this matter. Hence, we do not address these questions.

executive officer and selection committee. [¶] It seems to me that would be the admission that the power sought to be mandated is the superior court's power [e]ffected through its agent, the executive officer. [¶] [Code of Civil Procedure] section 1085 allows a writ to be issued against the inferior tribunal but the L.A. Superior Court isn't an inferior tribunal under the circumstances, as this court sees it. The matter should be transferred to the next level up, and that would be the Court of Appeal[]. That's my rationale." After the respondent court entered its ruling, a discussion was held as to how a case is transferred from the superior court to the Court of Appeal. The parties and the court were unable to decide how that was to occur.

On September 18, 2000, plaintiff filed a mandate petition with this court seeking to set aside the August 18, 2000, transfer order. We issued an order to show cause and set the matter for oral argument.

### III. DISCUSSION

#### A. *The Parties and the Proposed Amendment*

The present case involves an unusual procedural scenario which warrants brief clarification. Plaintiff no longer desires to proceed against Mr. Ohlrich or any of the entities of the Los Angeles Judicial District. This is because once the Los Angeles Superior and Municipal Courts unified, the municipal courts ceased to exist. (Cal. Const., art. VI, § 23, subd. (b).)[2] Upon unification, Mr. Ohlrich, who had been an employee of the municipal court, automatically became a superior court officer.[3] (Cal. Const., art. VI, §§ 23, subds. (b), (c)(1); Gov. Code, § 70212, subd. (a).) To further complicate matters, Mr. Ohlrich no longer even works for the Los Angeles Superior Court; he is now the Clerk of the California Supreme Court. A result, plaintiff has indicated to us that it intends to move to amend its amended petition to allege as the sole defendant, Mr. Clarke, the Los Angeles

---

[2]Article VI, section 23, subdivision (b) of the California Constitution states, "When the superior and municipal courts within a county are unified, the judgeships in each municipal court in that county are abolished and the previously selected municipal court judges shall become judges of the superior court in that county. . . ."

[3]Article VI, section 23, subdivision (c)(1) of the state Constitution states in relevant part: "Except as provided by statute to the contrary, in any county in which the superior and municipal courts become unified, the following shall occur automatically in each preexisting superior and municipal court: [¶] (1) Previously selected officers, employees, and other personnel who serve the court become the officers and employees of the superior court." Government Code section 70212, subdivision (a) states: "Except as provided by statute to the contrary, in a county in which the municipal and superior courts become unified, the following shall occur automatically in each preexisting municipal and superior court: [¶] (a) Previously selected officers (including subordinate judicial officers), employees, and other personnel who serve the court become the officers and employees of the superior court."

Superior Court Executive Officer. Plaintiff intends to allege that Mr. Clarke now has the authority to act on plaintiff's request for approval of its home study traffic school program. Our following analysis assumes that eventually Mr. Clarke would be named as a defendant. Since the transfer of the present case to Orange County Superior Court, which occurred promptly after the completion of the unification process in Los Angeles Superior Court, plaintiff has not had an opportunity to make a motion to amend to identify Mr. Clarke, the superior court executive officer, as the person who will be subject to potential injunctive orders.

### B. *The Power to Transfer*

The respondent court purported to order transfer of this case to us pursuant to Code of Civil Procedure section 396.[4] ■ Whether the respondent court had the power to transfer this case to us is an issue of

[4]Code of Civil Procedure section 396 provides: "If an action or proceeding is commenced in a court that lacks jurisdiction of the subject matter thereof, as determined by the complaint or petition, if there is a court of this state that has subject matter jurisdiction, the action or proceeding shall not be dismissed (except as provided in Section 399, and subdivision 1 of Section 581) but shall, on the application of either party, or on the court's own motion, be transferred to a court having jurisdiction of the subject matter that may be agreed upon by the parties, or, if they do not agree, to a court having subject matter jurisdiction that is designated by law as a proper court for the trial or determination thereof, and it shall thereupon be entered and prosecuted in the court to which it is transferred as if it had been commenced therein, all prior proceedings being saved. In any such case, if summons is served prior to the filing of the action or proceeding in the court to which it is transferred, as to any defendant, so served, who has not appeared in the action or proceeding, the time to answer or otherwise plead shall date from service upon that defendant of written notice of filing of the action or proceeding in the court to which it is transferred. [¶] If an action or proceeding is commenced in or transferred to a court that has jurisdiction of the subject matter thereof as determined by the complaint or petition, and it thereafter appears from the verified pleadings, or at the trial, or hearing, that the determination of the action or proceeding, or of a cross-complaint, will necessarily involve the determination of questions not within the jurisdiction of the court, in which the action or proceeding is pending, the court, whenever that lack of jurisdiction appears, must suspend all further proceedings therein and transfer the action or proceeding and certify the pleadings (or if the pleadings be oral, a transcript of the same), and all papers and proceedings therein to a court having jurisdiction thereof that may be agreed upon by the parties, or, if they do not agree, to a court having subject matter jurisdiction that is designated by law as a proper court for the trial or determination thereof. [¶] An action or proceeding that is transferred under the provisions of this section shall be deemed to have been commenced at the time the complaint or petition was filed in the court from which it was originally transferred. [¶] Nothing herein shall be construed to preclude or affect the right to amend the pleadings as provided in this code. [¶] Nothing herein shall be construed to require the superior court to transfer any action or proceeding because the judgment to be rendered, as determined at the trial or hearing, is one that might have been rendered by a municipal court in the same county or city and county. [¶] In any case where the lack of jurisdiction is due solely to an excess in the amount of the demand, the excess may be remitted and the action may continue in the court where it is pending. [¶] Upon the making of an order for transfer, proceedings shall be had as provided in Section 399 of this code, the costs and fees thereof,

statutory interpretation and we apply the following principles for construing statutes articulated by the California Supreme Court: "When interpreting a statute our primary task is to determine the Legislature's intent. [Citation.]" (*Freedom Newspapers, Inc. v. Orange County Employees Retirement System* (1993) 6 Cal.4th 821, 826 [25 Cal.Rptr.2d 148, 863 P.2d 218]; *People v. Jones* (1993) 5 Cal.4th 1142, 1146 [22 Cal.Rptr.2d 753, 857 P.2d 1163].) The Supreme Court has emphasized that the words in a statute selected by the Legislature must be given a commonsense meaning when it noted: " 'Our first step [in determining the Legislature's intent] is to scrutinize the actual words of the statute, giving them a plain and commonsense meaning. (*Mercer v. Department of Motor Vehicles* (1991) 53 Cal.3d 753, 763 [280 Cal.Rptr. 745, 809 P.2d 404]; *Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].)' (*People v. Valladoli* (1996) 13 Cal.4th 590, 597 [54 Cal.Rptr.2d 695, 918 P.2d 999].)" (*California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 633 [59 Cal.Rptr.2d 671, 927 P.2d 1175].) Further, the California Supreme Court has noted: " 'If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature (in the case of a statute) . . . .' [Citation.]" (*Delaney v. Superior Court* (1990) 50 Cal.3d 785, 798 [268 Cal.Rptr. 753, 789 P.2d 934]; *People v. Overstreet* (1986) 42 Cal.3d 891, 895-896 [231 Cal.Rptr. 213, 726 P.2d 1288].) However, the literal meaning of a statute must be in accord with its purpose. The California Supreme Court noted in *Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 658-659 [25 Cal.Rptr.2d 109, 863 P.2d 179] as follows: "We are not prohibited 'from determining whether the literal meaning of a statute comports with its purpose or whether such a construction of one provision is consistent with other provisions of the statute. The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. [Citation.] Literal construction should not prevail if it is contrary to the legislative intent apparent in the [statute] . . . .' [Citations.]" (Accord, *People v. King* (1993) 5 Cal.4th 59, 69 [19 Cal.Rptr.2d 233, 851 P.2d 27].) ■ In *Lungren v. Deukmejian, supra,* 45 Cal.3d at page 735, our Supreme Court added: "The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act. [Citations.] An interpretation that renders related provisions nugatory must be avoided [citation]; each sentence must be read not in isolation but in light of the statutory scheme [citation] . . . ." (Accord, *People v. King, supra,* 5 Cal.4th at p. 69.) The Supreme Court has held: " 'The courts must give statutes a reasonable construction which

---

and of filing the case in the court to which transferred, to be paid by the party filing the pleading in which the question outside the jurisdiction of the court appears unless the court ordering the transfer shall otherwise direct."

conforms to the apparent purpose and intention of the lawmakers.' (*Clean Air Constituency* v. *California State Air Resources Bd.* (1974) 11 Cal.3d 801, 813 [114 Cal.Rptr. 577, 523 P.2d 617].)" (*Webster v. Superior Court* (1988) 46 Cal.3d 338, 344 [250 Cal.Rptr. 268, 758 P.2d 596].) ■ In *People v. Jefferson* (1999) 21 Cal.4th 86, 94 [86 Cal.Rptr.2d 893, 980 P.2d 441], the Supreme Court held: " 'When the statutory language is ambiguous, the court may examine the context in which the language appears, adopting the construction that best harmonizes the statute internally and with related statutes. ([*Hsu* v. *Abbara* (1995) 9 Cal.4th 863, 871 [39 Cal.Rptr.2d 824, 891 P.2d 804]]; *Woods* v. *Young* (1991) 53 Cal.3d 315, 323 [279 Cal.Rptr. 613, 807 P.2d 455].)' (*Pacific Gas & Electric Co.* v. *County of Stanislaus* (1997) 16 Cal.4th 1143, 1152 [69 Cal.Rptr.2d 329, 947 P.2d 291].) ' "When the language is susceptible of more than one reasonable interpretation . . . , we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part." ' (*Granberry* v. *Islay Investments* (1995) 9 Cal.4th 738, 744 [38 Cal.Rptr.2d 650, 889 P.2d 970].)"

Code of Civil Procedure section 396 is located in chapter 1 of title 4 of the Code of Civil Procedure. Chapter 1 is entitled, Place of Trial. Code of Civil Procedure section 396 applies when a court in which an action is commenced lacks subject matter jurisdiction over the case. (*Rosenberg v. Superior Court* (1998) 67 Cal.App.4th 860, 866-867 [79 Cal.Rptr.2d 365].) ■ Subject matter jurisdiction involves "the court's power to hear and determine the cause" (*In re Griffin* (1967) 67 Cal.2d 343, 346 [62 Cal.Rptr. 1, 431 P.2d 625]) or "the power of the court over a cause of action or to act in a particular way. [Citation.]" (*Greener v. Workers' Comp. Appeals Bd.* (1993) 6 Cal.4th 1028, 1035 [25 Cal.Rptr.2d 539, 863 P.2d 784].) An absence of subject matter jurisdiction is defined as follows: "Lack of jurisdiction in its most fundamental or strict sense means an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties. . . ." (*Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 288 [109 P.2d 942, 132 A.L.R. 715]; accord, *People v. Superior Court (Marks)* (1991) 1 Cal.4th 56, 66 [2 Cal.Rptr.2d 389, 820 P.2d 613].)

■ Code of Civil Procedure section 396 has not been interpreted to allow a court under all circumstances to transfer a matter to another court. For example, transfers between the former municipal and small claims courts are not authorized by Code of Civil Procedure section 396. (*Rosenberg v. Superior Court, supra,* 67 Cal.App.4th at pp. 866-867.) Likewise, transfer of small claims cases to superior court are not authorized by Code of Civil Procedure section 396. (*Jellinek v. Superior Court* (1991) 228 Cal.App.3d

652, 658 [279 Cal.Rptr. 6].) Therefore, the issue in this case is whether section 396 is applicable when the superior court attempts to transfer a case to the Court of Appeal or even potentially to the Supreme Court.

Code of Civil Procedure section 396 was first enacted in 1933. (Stats. 1933, ch. 744, § 7, p. 1841.) The events leading up to its enactment demonstrate it was intended to allow transfer of cases between *trial* courts. The California Code Commission was created in 1929 with responsibility of revising "all laws of this state." (Stats. 1929, ch. 750, § 2, pp. 1427-1428.) Pursuant to that mandate, the California Code Commission began examining problems relating to trial court jurisdiction. At the same time, the Legislative Counsel Bureau solicited suggestions for revisions to California statutory law. (Turrentine, *Suggestions for Revision of Provisions of the California Civil Code Regarding Future Interests* (1932) 21 Cal. L.Rev. 1, fn. *.) Prior to the adoption of the initial version of Code of Civil Procedure section 396, it was settled that if the municipal or justice court was given jurisdiction over a case, then the superior court of the same county was jurisdictionally barred from acting in the matter. (*Shipp v. Superior Court* (1930) 209 Cal. 671, 676 [289 P. 825]; *The Williams Co. v. Superior Court* (1929) 97 Cal.App. 422, 424-425 [275 P. 838].) To complicate matters, for example, there were two separate classes of justice courts, each with their own jurisdiction. (Cal. Code Com., Suggested Revision of the Cal. Code Civ. Proc., 1st Draft (1932) p. 3.) If a lawsuit was filed in the wrong trial court, the defendant would be required to move to dismiss the action if no judgment had been entered. (*Id.* at p. 8; 2 Witkin, Cal. Procedure (4th ed. 1996) Jurisdiction, § 388, p. 992.) Sometimes, the issues of trial court jurisdiction would become complex and difficult. One commentator describes the situation in California trial courts as follows, "It is a chaotic state of the law that conceives of so many doubts as to the jurisdiction of our courts in the validity of their judgments." (Comment, *Effect upon Jurisdiction of Superior Courts of Statutes Vesting Jurisdiction in Municipal or Inferior Courts* (1932) 21 Cal. L.Rev. 42, 51.) Stanford University Law School Professor William B. Owens, a member of the California Code Commission, described the confusing jurisdictional nature of the superior, municipal, and two classes of justice court jurisdiction as "perplexing" and noted, "Attorneys and the courts are uncertain how to proceed in many situations. . . ." (Owens, *Jurisdiction: Where Is It?* (1932) 12 State Bar J. 303 (hereafter Owens).)

In response to the foregoing problems arising from trial court jurisdiction, the initial draft of Code of Civil Procedure section 396 prepared by the California Code Commission allowed for transfer of an action or proceeding from a court which lacks jurisdiction to one which had the jurisdictional

authority to proceed. (Cal. Code Com., Suggested Revision of Cal. Code Civ. Proc., 1st Draft, *supra*, p. 50.) The proposed transfer provisions of Code of Civil Procedure section 396 were placed among the venue sections of the proposed new code. The explanatory notes for the proposed draft state why the California Code Commission placed the proposed transfer section in the venue portion of the Code of Civil Procedure, "That the proper court <u>for trial</u> should be designated in the venue provisions of the Code, (which should be uniform for all courts) with provision of therein for securing transfer to the proper court in cases commenced in the wrong court, and for assuring the defendant's right to <u>have</u> it so transferred. . . ." (*Id.* at p. 7, original underscoring; accord, Owens, *supra*, 12 State Bar J. at pp. 304-305.) Further, the California Code Commission explained the purpose of proposed new Code of Civil Procedure section 396 as follows in a submission directly to the Legislature, "A new section (396) has been added, providing that if an action is begun in a court which lacks jurisdiction of the subject matter, it shall not be dismissed, but shall be transferred, on the court's own motion or on motion of a party, to the court having jurisdiction, which is, by provisions of the Code, designated as the proper court for *trial*, the cost to be paid by the plaintiff." (Cal. Code Com., Explanation and Cross-Reference Tables on Certain Proposed Amendments to the Code Civ. Proc. (1933) p. 16, italics added.) The Report of the California Code Commission issued on January 9, 1933, described the proposed Civil Procedure amendments as follows, "Pursuant to the request of the Judicial Council and of the State Bar, William B. Owens, a member of the commission, has prepared a revision of a large portion of the present California Code of Civil Procedure, with particular attention to harmonizing the provisions relating to jurisdiction and venue of, and practice in, the superior, municipal and inferior courts. . . ." (Cal. Code Com., Rep. of the Cal. Code Com. for the Years 1931-1932 (1933) p. 11.)

The proposed new provisions in Code of Civil Procedure section 396 were part of Assembly Bill No. 515, which was introduced on January 17, 1933. (Assem. Bill No. 515 (1933 Reg. Sess.) § 7.) The Legislative Counsel's digest of Assembly Bill No. 515 stated, "These amendments, prepared under the direction of the California Code Commission, . . . establish uniform rules of procedure in *trial courts* and eliminate existing confusion in the jurisdiction and venue provisions for inferior *trial courts*." (Legis. Counsel's Dig., Assem. Bill No. 515 (1933 Reg. Sess.), italics added.) Governor James Rolph, Jr., signed Assembly Bill No. 515 on June 5, 1933. All of the pertinent historical evidence indicates that the Legislature intended in 1933 when enacting Code of Civil Procedure section 396 to address the issue of transferring cases between trial courts which were then confronted with difficult jurisdictional disputes. ■ None of the documents prepared by scholars discussing the jurisdictional issues troubling trial judges, the

California Code Commission, or the Legislature even inferentially suggest that Code of Civil Procedure section 396 could be utilized to transfer a case from the superior court to the Court of Appeal.

Code of Civil Procedure section 396 has been amended on a number of occasions since 1933. In 1935, Code of Civil Procedure section 396 was amended to: clarify the power of the court to dismiss the case when the plaintiff failed to pay transfer costs; identify the powers of the court receiving the case; give the parties the power to amend the pleadings and to agree upon the court where case would be transferred; and provide that the transferred action has been commenced when filed in the original court. (Stats. 1935, ch. 722, § 1, pp. 1947-1948; Legis. Counsel's Dig., Assem. Bill No. 336 (1935 Reg. Sess.) p. 174.) In 1941, Code of Civil Procedure section 396 was amended to require transfer to a court of greater jurisdiction whenever a counterclaim was pleaded in excess of a court's jurisdiction regardless of whether it arose out of the same transaction identified in the complaint. (Stats. 1941, ch. 454, § 1, pp. 1750-1751; Legis. Counsel's Dig., Sen. Bill No. 495 (1941 Reg. Sess.) Summary Dig., p. 52.) A 1951 amendment changed the reference in the 1941 version of Code of Civil Procedure section 396 from "justices' court" to "justice court." (Stats. 1951, ch. 869, § 4, pp. 2385-2386; see Historical Note, 14 West's Ann. Code Civ. Proc. (1973 ed.) foll. § 396, p. 332.) In 1959, Code of Civil Procedure section 396 was amended to allow any interested party to pay any transfer costs if they remain unpaid by the plaintiff and to make such an item of postjudgment cost. (Stats. 1959, ch. 1487, § 1, pp. 3778-3779; Legis. Counsel's Dig., Assem. Bill No. 2220 (1959 Reg. Sess.) Summary Dig., p. 256.) In 1971, Code of Civil Procedure section 396 was amended to delete a reference to a counterclaim and insert in its place the word "cross-complaint." (Stats. 1971, ch. 244, § 16, pp. 376-377; Legis. Counsel's Dig., Sen. Bill No. 201 (1971 Reg. Sess.) Summary Dig., p. 38.) In 1974, Code of Civil Procedure section 396 was amended to modify the provision allowing any party to pay transfer costs which was adopted in 1959. As a result of the 1974 amendment, unless the court ordered another party to pay the costs, they were to be paid by the plaintiff. (Stats. 1974, ch. 1369,§ 1, pp. 2963-2964; Legis. Counsel's Dig., Assem. Bill No. 3439 (1973-1974 Reg. Sess.) Summary Dig., p. 228.) In 1998, minor changes were made to Code of Civil Procedure section 396 as part of the trial court unification process. (Stats. 1998, ch. 931, § 64.) As in the case with the original adoption of Code of Civil Procedure section 396 in 1933, in none of the subsequent amendments is there is any indication that the Legislature intended that the superior court could transfer a case to the Court of Appeal.

We respectfully disagree with the analysis of the Fifth District Court of Appeal in *Padilla v. Department of Alcoholic Beverage Control* (1996) 43

Cal.App.4th 1151, 1154-1157 [51 Cal.Rptr.2d 133], which concludes that the superior court can transfer a case to which it has no subject matter jurisdiction to the Court of Appeal. In *Padilla*, our Fifth District colleagues concluded that Code of Civil Procedure section 396, by its very terms, allows transfer of a case from the superior court to the Court of Appeal. To begin with, *Padilla* is inconsistent with the aforementioned holdings in *Rosenberg v. Superior Court, supra,* 67 Cal.App.4th at pages 866-867 and *Jellinek v. Superior Court, supra,* 228 Cal.App.3d at page 658, which hold that Code of Civil Procedure section 396 does not allow courts to transfer cases in certain circumstances involving the small claims courts. In *Padilla*, the court did not have the extensive legislative history discussed above which indicates that there never was any intention on the part of the Legislature to allow the superior court to transfer cases to the Court of Appeal. Additionally, Code of Civil Procedure section 399, which is specifically mentioned in Code of Civil Procedure section 396, refers to the filing of a mandate petition pursuant to Code of Civil Procedure section 400, which involves a change of the place of "trial." Quite obviously, no trial in the traditional sense can occur before the Court of Appeal. For these reasons, we respectfully disagree with *Padilla* insofar as it concludes Code of Civil Procedure section 396 allows the superior court to transfer a case to the Court of Appeal or possibly even the Supreme Court.

Apart from the fact that the respondent court did not have the power to transfer this case to us, we believe there is a separate ground for finding Code of Civil Procedure section 396 inapplicable. Code of Civil Procedure section 396 only grants the power to transfer when "an action or proceeding is commenced in a court that lacks jurisdiction of the subject matter thereof . . . ." (*Rosenberg v. Superior Court, supra,* 67 Cal.App.4th at p. 867 ["The plain language of section 396 permits transfer only when the transferring court lacks jurisdiction of the subject matter."].) The superior court has jurisdiction over a mandate petition to compel a person, such as a public employee, to comply with a duty imposed by law. Article VI, section 10 of the California Constitution states, "The Supreme Court, courts of appeal, superior courts, and their judges have original jurisdiction in habeas corpus proceedings. Those courts also have original jurisdiction in proceedings for extraordinary relief in the nature of mandamus, certiorari, and prohibition. . . ." Code of Civil Procedure section 1085, subdivision (a) states in pertinent part, "A writ of mandate may be issued by any court, . . . to any . . . person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office . . . or to compel the admission of a party to the use and enjoyment of a right or office to which the party is entitled, and from which the party is unlawfully precluded by such . . . person." It is well established that court clerks, or as they are also referred

to, executive officers, are subject to writs of mandate issued by appellate courts. (*DeGarmo v. Superior Court* (1934) 1 Cal.2d 83, 86 [33 P.2d 411]; *People v. Loucks* (1865) 28 Cal. 68, 70-71; *Brown v. Superior Court* (1925) 70 Cal.App. 732, 737 [234 P. 409].) The fact that the present case was filed in the respondent court does not change the result. Mr. Clarke is a person and the parties agree he would be the responsible officer for determining whether to certify plaintiff as a traffic school provider. The respondent court had subject matter jurisdiction; hence, it could not order transfer under Code of Civil Procedure section 396.

The respondent court makes the following argument as to why it has no subject matter jurisdiction. It argues that the case was assigned to Orange County Superior Court. Therefore, it is asserted, it would be inappropriate for one superior court to issue a writ of mandate directed at another court. The respondent court argues: "[T]he Orange County Superior Court (or any other Superior Court) does not have jurisdiction to consider this matter because a Superior Court cannot compel another Superior Court to take action or refrain from taking action. Because [plaintiff] seeks to compel the Los Angeles Superior Court to do an act, the Court of Appeal is the proper venue for this case.". To begin with, this case was not transferred to the Orange County Superior Court because of a change of venue or the like. Rather, an Orange County Superior Court Judge, the Honorable Robert D. Monarch, was assigned to sit as a Los Angeles Superior Court Judge. This was because former Los Angeles Superior Court Presiding Judge Chavez asked for and received an order from the Chairperson of the Judicial Council assigning a judge from another county to handle a lawsuit which was now pending against the former municipal court and one of its officers. The former municipal court no longer existed. The municipal court and its staff were now all part of the Los Angeles Superior Court. The claim of the respondent court that the present lawsuit is one in which the Orange County Superior Court may issue orders directed at the Los Angeles Superior Court has no foundation in fact whatsoever. This is a case of a lawsuit pending before a jurist who normally sits as an Orange County judge but is sitting by assignment on the Los Angeles Superior Court. No doubt, there are cases where a party may file a lawsuit against a trial court in the Court of Appeal. (E.g., *Hogoboom v. Superior Court* (1996) 51 Cal.App.4th 653, 656, fn. 1 [59 Cal.Rptr.2d 254] [propriety of superior court fee]; *Service Employees Internat. Union v. Superior Court* (1982) 137 Cal.App.3d 320, 322 [187 Cal.Rptr. 9] [dictum asserting that the Court of Appeal was the "lowest level court" with jurisdiction over an employee dispute involving a superior court].) However, so long as ethical concerns are resolved, as was done by former Presiding Judge Chavez in this case with this request to the Chairperson of the Judicial Council to reassign this case to an out of county jurist, no statute

prohibits the superior court from issuing an order to its executive officer. By contrast, article VI, section 10 of the California Constitution and Code of Civil Procedure section 1085, subdivision (a) explicitly vest the power to issue a writ of mandate in the superior court; i.e., to order a person such as Mr. Clarke to comply with an alleged legal duty.

Finally, at oral argument, we raised the question whether a tort action against the superior court executive officer could be filed in the superior court. Counsel for the respondent court admitted that a tort action against the superior court executive officer could be heard in the superior court, after ethical issues were resolved. We then inquired as to why it would be any different if an equitable action against the superior court executive officer were filed. The answer we were given was that the defenses are different in equitable and legal actions. This distinction is unpersuasive and does not answer the real issue; does the superior court have subject matter jurisdiction pursuant to article VI, section 10 of the California Constitution and Code of Civil Procedure section 1085, subdivision (a), to order a person to comply with a legal obligation or to direct the performance of an act which the law requires? Article VI, section 10 of the state Constitution and Code of Civil Procedure section 1085, subdivision (a) quite obviously do vest such power in the superior court. There is no merit to the argument of the respondent court that it does not have subject matter jurisdiction pursuant to Code of Civil Procedure section 1085, subdivision (a). Since it has subject matter jurisdiction, the respondent court could not order transfer pursuant to Code of Civil Procedure section 396.

## IV. DISPOSITION

Let a peremptory writ of mandate issue directing the respondent court to set aside its August 18, 2000, order transferring this case to the Court of Appeal. All parties shall bear their own costs incurred in connection with these writ proceedings.

Armstrong, J., concurred.

**GRIGNON, J.,** Concurring and Dissenting.—I concur in the judgment and that portion of the majority opinion which concludes respondent court has subject matter jurisdiction to consider the merits of plaintiff's claims concerning a proposed home study traffic school program. I dissent from that portion of the majority opinion relating to Code of Civil Procedure section 396 for two reasons. First, because we conclude respondent court has subject matter jurisdiction, Code of Civil Procedure section 396 is not applicable by its own terms ("If an action or proceeding is commenced in a court that lacks

jurisdiction of the subject matter thereof . . .".). Accordingly, the entire discussion in the majority opinion is dictum. Second, I disagree on the merits for the reasons stated in *Padilla v. Department of Alcoholic Beverage Control* (1996) 43 Cal.App.4th 1151, 1154-1147 [51 Cal.Rptr.2d 133].

On May 31, 2001, the opinion was modified to read as printed above.