[Civ. No. 4002. Fifth Dist. May 1, 1979.]

WINDIGO MILLS, Plaintiff and Respondent, v.
UNEMPLOYMENT INSURANCE APPEALS BOARD,
Defendant and Appellant.

588

590

**COUNSEL**

Evelle J. Younger and George Deukmejian, Attorneys General, John J. Klee, Jr., Assistant Attorney General, Thomas E. Warriner and Janet G. Sherwood, Deputy Attorneys General, for Defendant and Appellant.

Low, Stone & Wolfe, Jerome B. Smith and Joseph Stone for Plaintiff and Respondent.

Ronald A. Zumbrun, John H. Findley and Sandra M. Robertson as Amici Curiae on behalf of Plaintiff and Respondent.

## OPINION

**FRANSON, J.—**

### STATEMENT OF THE CASE

This appeal is from a judgment granting a writ of administrative mandate pursuant to Code of Civil Procedure section 1094.5. By the writ the trial court ordered appellant, the California Unemployment Insurance Board (hereinafter Board), to set aside its decision that certain employees who had participated in a strike against respondent Windigo Mills (hereinafter Windigo) were eligible to receive unemployment insurance benefits.

The employees' applications for unemployment benefits were originally denied by the Employment Development Department on the ground that the claimants were ineligible for such benefits under California Unemployment Insurance Code section 1262.[1] The claimants appealed this decision to the Board and a hearing was held before an administrative law judge (hereinafter ALJ). The ALJ ruled that section 1262 did not preclude the claimants from receiving benefits. The ALJ determined that the striking employees had been permanently replaced by their employer; hence, the strike was no longer the cause of their unemployment.

Windigo filed an appeal from that decision with the Board. It asserted that the ALJ erred in finding that the striking employees had been permanently replaced. According to Windigo, the evidence established that jobs had been kept open for the striking employees and the labor dispute was the only reason why the claimants did not return to work; therefore, section 1262 should preclude the striking employees from receiving benefits. This contention was rejected by the Board, which affirmed the ALJ's decision favorable to the claimants (except as to one claimant whose eligibility is not important to this appeal).

Windigo then filed a petition for a writ of administrative mandate in the superior court pursuant to Code of Civil Procedure section 1094.5

---

[1]Section 1262 provides: "An individual is not eligible for unemployment compensation benefits, and no such benefit shall be payable to him, if he left his work because of a trade dispute. Such individual shall remain ineligible for the period during which he continues out of work by reason of the fact that the trade dispute is still in active progress in the establishment in which he was employed."

seeking to have the Board's decision set aside. The petition was accompanied by a number of exhibits, including several declarations by Windigo officers and executives. An alternative writ was issued, and the matter was set for hearing.

When the Board filed its return to the alternative writ, it objected to Windigo's filing of the above declarations. The Board requested the court to strike the declarations as improper attempts to introduce evidence which was not a part of the administrative record. The Board alleged that the new evidence was inadmissible because Windigo had failed to make the required showing that either the new evidence could not have been produced at the administrative hearing in the exercise of reasonable diligence, or that it was improperly excluded by the ALJ (Code Civ. Proc., § 1094.5, subd. (e)).[2] The Board later voiced an objection to the declarations on the ground that they constituted inadmissible hearsay, worked a denial of the right to cross-examine, and contained opinions and conclusions rather than facts within the declarants' personal knowledge. Responding to the Board's objection, Windigo filed additional declarations explaining why the matters contained in the previous declarations were not introduced at the administrative hearing. The superior court overruled the Board's objections and denied the motion to strike the declarations with the exception of the declaration by Robert Hastey.

The Board thereafter filed a counter declaration by an employee of the Hanford office of the Employment Development Department to the effect that certain employees had reported to the Hanford office that they had applied for work at Windigo after the strike had begun. This declaration was offered to rebut Windigo's assertions that none of the claimants had been refused reinstatement to their jobs when they sought to abandon the strike and return to work. Windigo subsequently moved to strike the declaration submitted by the Board on the ground that it was based solely on hearsay. The motion was granted.

---

[2]Code of Civil Procedure section 1094.5, subdivision (e) provides in pertinent part: "Where the court finds that there is relevant evidence which, in the exercise of reasonable diligence, could not have been produced or which was improperly excluded at the hearing before respondent, it may enter judgment . . . remanding the case to be reconsidered in the light of such evidence; or, *in cases in which the court is authorized by law to exercise its independent judgment on the evidence, the court may admit such evidence at the hearing on the writ without remanding the case.*" (Italics added.)

The superior court announced that after reviewing the evidence it had concluded that the Board's decision was not supported by the weight of the evidence. Specifically, there was insufficient evidence to support the Board's finding that the claimants' employment had been terminated by Windigo.

Windigo thereafter submitted a proposed judgment. The Board objected to the judgment on the ground that it purported to affect matters which were not in issue before the Board. The trial court overruled the Board's objections and signed the judgment. The Board filed a timely notice of appeal.

## THE EVIDENCE

Windigo is a California corporation which manufactures carpet yarn. On February 2, 1976, most of Windigo's employees (some 186 persons who worked as machine operators), who were members of United Rubber Workers Union Local 703, engaged in a strike. The president of the company, Ms. Beatrice Fritz, sent a letter to the striking employees in an attempt to convince them to return to work. That letter stated in part: "We are now calling you back to work on February 16, 1976. If you do not return to work by February 16, the company, under the National Labor Relations Act, *has the right* to permanently replace you." (Italics added.) Although several employees did return to work, the majority of the employees remained on strike. Soon thereafter, Windigo began hiring new employees. As new workers were hired, the plant gradually resumed fulltime operations. By mid-April (approximately two months after the strike commenced), the plant was in operation seven days a week and three shifts per day; at that time Windigo had approximately one hundred thirty workers. By the time of the administrative hearing on July 21, 1976, Windigo had approximately 195 workers employed.

The main point of controversy at the administrative hearing was whether the hiring of the new employees by Windigo constituted permanent replacement of the strikers, such as to terminate their employment with Windigo and make them eligible for unemployment benefits. At a prior superior court hearing, Ms. Fritz had described the new employees as "permanent replacements for the strikers"; however, she also stated that not all of the strikers had been replaced. Windigo's officers testified that the company still had positions available at the time of the administrative hearing which could be filled by striking union

members who wanted to return to work. Ms. Fritz stated that at the time of the hearing, Windigo had sufficient orders to put 60 more machine operators to work. She explained that there had been a large increase in the demand for Windigo's product.

The evidence at the administrative hearing also established that although the striking employees were told by a union representative that they had been permanently replaced, several employees went to the plant to see if they could return to work; they were permitted to resume working and were reinstated with full seniority. Several employees who returned to work submitted declarations reciting that to their knowledge no strikers were turned away when they asked to return to work. There was no evidence to rebut Windigo's contention that any striker who wished to return to work was promptly reinstated.

### THE ADMISSIBILITY OF NEW EVIDENCE AT THE ADMINIS-TRATIVE MANDAMUS HEARING

Appellant challenges the superior court's ruling admitting Windigo's declarations into evidence on two basic grounds. First, it is argued that Windigo failed to lay a proper foundation for such evidence by showing that it was relevant evidence which, in the exercise of reasonable diligence, could not have been produced or was improperly excluded at the administrative hearing. (Code Civ.Proc., § 1094.5, subd. (e).) Appellant asserts that the new evidence could either have been produced at the administrative hearing by due diligence or was of events which occurred after the date of the hearing and should have been excluded as irrelevant under the limited judicial review permitted by section 1094.5. Second, appellant argues that the receipt of the declarations into evidence over objection violated the evidentiary rules governing civil trials since the declarations constituted inadmissible hearsay. ■ For the reasons to be explained, we hold that the trial court in an administrative mandamus proceeding may admit declarations into evidence over a general hearsay objection, and such declarations are not made inadmissible by their reference to posthearing events; however, in this case certain of the declarations and portions of others should have been excluded either because Windigo failed to lay the foundation required by section 1094.5, subdivision (e) or because they contained conclusions not based on personal knowledge. Although certain declarations were erroneously admitted, we further conclude that the error does not require a reversal

since there is substantial evidence in the administrative record apart from the declarations to support the judgment, and it is not reasonably probable that the trial court would have reached a different result absent the "new" evidence since its effect was merely cumulative (Cal. Const., art. VI, § 13).

The declaration battle at the superior court hearing indicates that the trial court and Windigo did not fully comprehend the limited nature of the judicial review provided by section 1094.5. ■ The inquiry in such a review extends only to whether the administrative agency has proceeded without, or in excess of jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion (§ 1094.5, subd. (b)). (Abuse of discretion is established if the respondent has not proceeded in the manner provided by law, the decision is not supported by the findings, or the findings are not supported by the evidence (*ibid.*)). "It is not contemplated by the code provision that there should be a trial de novo before the court reviewing the administrative agency's action even under the independent review test." (*Hadley* v. *City of Ontario* (1974) 43 Cal.App.3d 121, 127 [117 Cal.Rptr. 513]; see generally, Netterville, *Judicial Review: The "Independent Judgment" Anomaly* (1956) 44 Cal.L.Rev. 262.) Public policy requires a litigant to produce all existing evidence on his behalf at the administrative hearing (see *Akopiantz* v. *Board of Medical Examiners* (1961) 190 Cal.App.2d 81, 93 [11 Cal.Rptr. 810]). Only where the record is augmented within the strict limits set forth in the statute is evidence on the main issues ever received in the superior court (Deering, Cal. Administrative Mandamus (Cont.Ed.Bar 1966) p. 86).

■ In the present case, Windigo filed supplemental declarations explaining why its officers, the original declarants, were unable to testify at the administrative hearing. The reason given was that the officers' presence was required at the plant because of the strike. Such a reason is patently insufficient since there is no showing why their testimony could not have been presented at the administrative hearing by way of affidavit. Thus, the trial court clearly erred in admitting the declaration of Robert Fritz. The court also erred in admitting the declaration of Beatrice Fritz insofar as it contained reference to facts or events which were in existence at the date of the administrative hearing; there was no showing as to why Ms. Fritz could not have testified to these facts before the ALJ or why she could not have presented this testimony by affidavit to the Board.[3]

---

[3]The trial court also erred in not entering a specific finding on each objection as it related to a particular declaration. Furthermore, the court did not specify whether the

In keeping with the principle of limited judicial review of agency decisions, appellant asks us to restrict the newly discovered evidence principle articulated in section 1094.5, subdivision (e) to evidence that was in existence at the date of the administrative hearing so that it would have been produced at the hearing if the petitioner had known of its existence. Appellant seeks to draw an analogy from the general rule of appellate review of trial court decisions that error cannot be predicated upon matters occurring after the trial court has rendered its judgment. ■ The appeal reviews the correctness of the judgment or order as of the time of its rendition; leaving later developments to be handled in subsequent litigation. (See *People's Home Sav. Bank* v. *Sadler* (1905) 1 Cal.App. 189, 192 [81 P. 1029]; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 220, p. 4210-4211.) However, judicial review of administrative agency decisions is not the same as normal appellate review. Mandamus review of agency decisions is grounded on the fact that the agency does not have full judicial power in the constitutional sense; such power is vested only in the courts of record (Cal. Const., art. VI, § 1; see art. III; *Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 141-144 [93 Cal.Rptr. 234, 481 P.2d 242]). For this reason, the independent judgment review under section 1094.5 has been described as a limited trial de novo where, to save the time and expense required to remand the case to the agency for reconsideration in the light of the new evidence, the superior court is authorized to consider the new evidence in reviewing the administrative decisions if it chooses to do so. This accords with the traditional rule that mandamus, unlike certiorari, is an equitable proceeding designed to achieve justice where no other remedy is available. (*Dare* v. *Bd. of Medical Examiners* (1943) 21 Cal.2d 790, 796-801 [136 P.2d 304].) "[A]dministrative mandamus did not thereby acquire a separate and distinct legal personality. It is not a remedy removed from the general law of mandamus or exempted from the latter's established principles, requirements and limitations." (*Grant* v. *Board of Medical Examiners* (1965) 232 Cal.App.2d 820, 826 [43 Cal.Rptr. 270].)

When the Legislature granted the superior court the discretion to receive "relevant evidence which, in the exercise of reasonable diligence, could not have been produced at the administrative hearing," it reasonably may be inferred that it meant to authorize the receipt of

declarations were admissible as evidence improperly excluded at the administrative hearing or as evidence which could not have been produced below in the exercise of due diligence. Failure to adequately focus on the individual declarations renders appellate review exceedingly difficult.

evidence of events which took place after the administrative hearing. *Mobil Oil Corp.* v. *Superior Court* (1976) 59 Cal.App.3d 293 [130 Cal.Rptr. 814] (hg. den.) supports this view. There, the trial court had entered an order limiting the oil company's right of discovery in an administrative mandamus action to acts occurring *before* the date of the administrative hearing. The Court of Appeal issued a writ of prohibition striking the portion of the order limiting discovery to prior events, holding that "[e]vidence of acts, data, reports and other evidence *within the limits of section 1094.5, subdivision (d)* [now subd. (e)] is admissible regardless of whether it deals with events which occur before or after the date of the [administrative] hearing." (*Id.,* at p. 306; see also Deering, Cal. Administrative Mandamus, *supra,* pp. 218-223.) ■ We conclude that the superior court is authorized under section 1094.5, subdivision (e) to receive relevant evidence of events which transpired after the date of the agency's decision.[4]

We turn now to the propriety of the use of affidavits in the mandamus action. ■ The general rule in civil actions is that absent statutory authorization, stipulation of the parties, or a waiver by failure to object, an affidavit (Code Civ. Proc., § 2003) or a declaration under penalty of perjury (Code Civ. Proc., § 2015.5) is not competent evidence; it is hearsay because it is prepared without the opportunity to cross-examine the affiant. (Evid. Code, §§ 300, 1200; see Code Civ. Proc., § 2009; Witkin, Cal. Evidence (2d ed. 1966) § 628, p. 588.) If all the evidentiary rules governing civil trials applied at a section 1094.5 hearing, Windigo's declarations should not have been admitted.

■ On the other hand, the presentation of evidence by affidavit is common practice at administrative hearings. For agencies under the Administrative Procedure Act (Gov. Code, § 11500 et seq.), affidavits may serve as direct evidence if no request to cross-examine is made. (Gov. Code, § 11514; see Administrative Agency Practice (Cont.Ed.Bar 1970) § 2.84, pp. 119-120.) Although the Board is not governed by the APA, the Unemployment Insurance Code provides in pertinent part: "The Appeals Board and its representatives and referees are not bound by common law

[4]This does not mean that the trial court should admit such evidence in all cases. In keeping with the principle that the administrative agency should have the first opportunity to decide the case on the basis of all of the evidence, the better practice might be to remand the action for agency redetermination in the light of the new evidence, particularly where the evidence would have been crucial to the administrative decision.

or statutory rules of evidence or by technical or formal rules of procedure but may conduct the hearings and appeals in such manner as to ascertain the substantial rights of the parties. . . ." (Unemp. Ins. Code, § 1952.) The regulations adopted by the Employment Development Department provide "[a]ny relevant evidence shall be admitted if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs, regardless of the existence of any common law or statutory rule which might make improper the admission of such evidence over objection in civil actions." (Cal. Admin. Code, Appeals Board, tit. 22, § 5038, subd. (c).) Under this standard, affidavits by persons as to facts within their personal knowledge would qualify as competent evidence provided the opposing party's right to cross-examine is fully protected.

Code of Civil Procedure section 1094.5, subdivision (e) authorizes the court to admit such evidence as is relevant and which, in the exercise of reasonable diligence, "could not have been produced or which was improperly excluded at the [administrative] hearing." The words "such evidence" reasonably may be construed to mean the type of evidence that could have been produced at the administrative hearing but for the agency's wrongful exclusion or the petitioner's inability to produce it by due diligence. If an affidavit should be wrongly excluded at the administrative hearing, it would be admissible in the superior court. Similarly, if by the exercise of due diligence a party was unable to present evidence at the administrative hearing which could have been admitted by way of affidavit, he should be permitted to introduce the same evidence in the superior court by affidavit. In short, we see no reason why evidence relevant to the agency decision should not be admitted in the superior court under the same rules as those governing the admissibility of evidence at the administrative hearing. ■ We conclude therefore that Code of Civil Procedure section 1094.5, subdivision (e) constitutes statutory authority for the use of affidavits as direct evidence at administrative mandamus hearings in the superior court, subject of course, to the rules governing the right of cross-examination and to the prohibition against double hearsay.

■ We now examine the declaration offered by the Board in response to the Windigo declarations. The Board filed a declaration by Kermit Nichols, a supervisor in the unemployment insurance section of the

Hanford office of the Employment Development Department, to the effect that he had reviewed the files on the Windigo trade dispute to determine whether any of the claimants had reported to his office that they had applied for work at Windigo after the date the trade dispute began. He then stated, "The following people reported that they had applied for work at Windigo Mills . . ." thus implying they had tried to return to their job while the dispute was pending. Although Windigo acknowledged the Board's right to present evidence by affidavit, it objected on the specific ground that Nichols' declaration contained inadmissible double hearsay in that it was based on statements made to him by third parties. Such objection was valid, and the trial court properly excluded the declaration (Evid. Code, § 1200).

## THE ADMINISTRATIVE RECORD
## SUPPORTS THE JUDGMENT

■ Appellant concedes that the standard for judicial review of decisions of the Unemployment Insurance Appeals Board is the independent judgment standard rather than the substantial evidence test, citing *Kilpatrick's Bakeries, Inc.* v. *Unemployment Ins. Appeals Bd.* (1978) 77 Cal.App.3d 539 [143 Cal.Rptr. 664] (hg. den.). Thus, the trial court properly weighed the evidence at the administrative hearing.

■ The scope of our appellate review, however, is limited to a determination of whether the trial court's decision is supported by substantial evidence. The judgment will be upheld if there is any credible evidence in support of the superior court findings; any contrary evidence must be disregarded. (*Moran* v. *Board of Medical Examiners* (1948) 32 Cal.2d 301 [196 P.2d 20]; see also Deering, Cal. Administrative Mandamus, *supra,* § 15.25, pp. 280-281.)

■ Of primary importance in the present case is the rule that an applicant for unemployment insurance benefits has the burden of establishing eligibility. (*Loew's Inc.* v. *California Emp. etc. Com.* (1946) 76 Cal.App.2d 231, 238 [172 P.2d 938]; *Jacobs* v. *California Unemployment Ins. Appeals Bd.* (1972) 25 Cal.App.3d 1035, 1039, fn. 7 [102 Cal.Rptr. 364].)

In *Ruberoid Co.* v. *California Unemployment Ins. Appeals Board* (1963) 59 Cal.2d 73 [27 Cal.Rptr. 878, 378 P.2d 102], the Supreme Court explained the effect of Unemployment Insurance Code section 1262 (see fn. 1, *ante*) as follows: "[T]he disqualification of the section must rest upon two elements: the worker must voluntarily leave or remain away from his employment because of a trade dispute. . . . [T]he first prerequisite involves a volitional test and the second, a causational test." (*Id.,* at p. 77.) █ Whether the employees voluntarily remain away from work because of the labor dispute is a determination that must be made in the context of particular facts (*Isobe* v. *Unemployment Ins. Appeals Bd.* (1974) 12 Cal.3d 584, 589 [116 Cal.Rptr. 376, 526 P.2d 528]).

█ In the present case, it is undisputed that the claimants voluntarily left work because of a labor dispute. The only question is whether they remained away from work voluntarily because of the dispute. Evidence to support the trial court's determination that this was the case is as follows: Ms. Fritz testified that there were openings for the strikers despite the hiring of the new employees. She testified that due to increased demand, the plant had openings in every job classification, including 60 openings for machine operators. The evidence before the ALJ also demonstrated that a number of striking employees who had requested to return to work had been reinstated with full benefits. Importantly, there was no evidence suggesting that any employee who wanted to work had been refused a job. Moreover, even if there were insufficient openings for *all* the strikers, this would not compel the trial court to find all of the claimants eligible. In *Isobe* v. *Unemployment Ins. Appeals Bd., supra,* 12 Cal.3d 584, only 85 percent of the strikers' jobs remained open. Some of the strikers had been permanently replaced, yet the court held that since the majority of the jobs were still open, the workers who did not return to fill the openings were ineligible for benefits (*id.,* at pp. 589-590, fn. 7). That the new workers were hired on a permanent basis does not mean that the striking workers had been permanently discharged where, as in the instant case, there were always jobs available due to the dramatic increase in the employer's business during the strike period.

In *Thomas* v. *California Emp. Stab. Com.* (1952) 39 Cal.2d 501 [247 P.2d 561], it is suggested that unless there is an *unequivocal act* by the employer discharging the strikers, the claimants must demonstrate willingness to return to work in order to be eligible for unemployment benefits. In that case the employer had sent out termination notices yet the employees were held ineligible to receive benefits because there was

no evidence that the notices had anything to do with the claimants' decision to remain out of work. None of the claimants had testified that he would have returned to work if he had not been discharged or that he would have been willing to cross the picket line (*id.*, at pp. 505-506). The employer's action of sending out the termination notices was not viewed as sufficient to break the causal connection between the labor dispute and the claimants' unemployment, because the employer equivocated as to whether the employees were terminated. During the period that the termination notices were issued, the employer was also sending out requests to the employees to return to work. (See conc. opn., Traynor, J., 39 Cal.2d at pp. 507-508.) Since there was no unequivocal discharge of the employees, the majority in *Thomas* found it significant that the employees had not demonstrated their willingness to return to work.

The evidence in the present case does not establish that the employer acted unequivocally to terminate the strikers. Although the employer did hire some permanent workers to replace strikers and keep the plant operating, this does not compel a result that all of the strikers were terminated thereby becoming eligible for benefits (see *Rice Lake Creamery Co.* v. *Industrial Commission* (1961) 15 Wis.2d 177 [112 N.W.2d 202], holding that permanent replacement of strikers does not terminate the employment status of the strikers as a matter of law).

Appellant contends that *Ruberoid, supra,* compels a finding that the claimants in the present case had been permanently discharged and thus were entitled to benefits. In *Ruberoid* the employer had sent a letter to its striking employees stating that "[u]nless you report . . . for work . . . , *you will be* permanently replaced" (italics added, 59 Cal.2d at p. 75, fn. 1). In *Ruberoid* the employer also sent the strikers notice that they had been permanently replaced and enclosed a check for their pro rata vacation pay to the date of the strike. Also, in *Ruberoid,* upon applying for work, eight of the strikers were not rehired (59 Cal.2d at p. 76). In the present case, Ms. Fritz' letter to the strikers merely informed them that Windigo "had the right" to permanently replace them if they did not return to work. The evidence shows that all strikers who requested the right to return to work were immediately hired and all seniority privileges were reinstated.

We hold there is substantial evidence in the administrative record to support the trial court's implied finding that the striking employees could have returned to work if they had wanted to cross the picket line; therefore, there is adequate support for the trial court's decision that the

claimants were ineligible for unemployment benefits under the provisions of section 1262.

### THE JUDGMENT AND ORDERS
### ISSUED BY THE TRIAL COURT

Appellant's final contention is that the trial court erred by including in its judgment certain orders concerning the charging of unemployment benefits to Windigo's reserve account. The portions of the judgment objected to are as follows:

"IT IS FURTHER ORDERED that Petitioner's Unemployment Insurance Reserve Account shall not be charged with the payments illegally made to the striking employees listed in Exhibit 'A' hereto, that Petitioner's Unemployment Insurance Contributions shall not be increased by reason of the payments illegally made to the striking employees and that an increase in Petitioner's rate of contribution which has already occurred because of the illegal charge to Petitioner's Reserve Account shall be and is hereby reversed. Petitioner's rate of contribution shall be recomputed in accordance with the terms of this Judgment;

"IT IS FURTHER ORDERED that if the Petitioner's Unemployment Insurance Reserve Account has been charged with all or any of the payments made to the striking employees listed in Exhibit 'A' hereto, such entries shall be reversed and Petitioner's Unemployment Insurance Reserve Account should be credited with the amounts erroneously charged.

"IT IS FURTHER ORDERED that any further claims for Unemployment Insurance Benefits by any employee of Petitioner who became unemployed by result of the aforementioned trade dispute be denied or if they are not denied, payments to such claimants shall be made from the Employment Development Department Balancing Account and not from Petitioner's Reserve Account."

Appellant contends that the above orders were improper because they were not within the trial court's jurisdiction and because certain portions of the above order were in violation of Unemployment Insurance Code section 1338. That section provides that: "If the Appeals Board issues a decision allowing benefits the benefits shall be paid regardless of any further action taken by the director, the Appeals Board, or any other administrative agency, and regardless of any appeal or mandamus, or

other proceeding in the courts. If the decision of the Appeals Board is finally reversed or set aside, no employer's account shall be charged with the benefits paid pursuant to this section." In light of the first sentence of that section, the trial court's order was invalid insofar as it purported to require the denial of future benefits to the claimants. The second sentence of section 1338 indicates that the other portions of the trial court's order which stated that Windigo's reserve account should not be charged with the payments made to claimants were unnecessary; the statute itself provides for that result.

Appellant also correctly argues that the trial court's order regarding the reserve account was improper because the agency charged with administering reserve accounts at the time the order was made (the Department of Benefit Payments) was not a party before the court.

The judgment ordering issuance of a writ of mandate to set aside the decision of the Board is affirmed; however, the other portions of the judgment are improper and should be stricken. The matter is remanded to the trial court with directions to enter a new judgment in accordance with the views expressed herein.

Brown (G. A.), P. J., and Best, J.,* concurred.

A petition for a rehearing was denied May 24, 1979, and the opinion was modified to read as printed above. Appellant's petition for a hearing by the Supreme Court was denied July 12, 1979. Bird, C. J., was of the opinion that the petition should be granted.

*Assigned by the Chairperson of the Judicial Council.