[No. H026441. Sixth Dist. Apr. 28, 2005.]

PAJARO VALLEY WATER MANAGEMENT AGENCY, Plaintiff and
Respondent, v.
WILLIAM J. MCGRATH, Defendant and Appellant.

COUNSEL

Covington & Crowe and Robert E. Dougherty for Defendant and Appellant.

Nossaman, Knowx & Elliott, Stephen N. Roberts, Nicole A. Tutt and Sophie N. Froelich for Plaintiff and Respondent.

OPINION

**RUSHING, P. J.**—Plaintiff Pajaro Valley Water Management Agency (the Agency) brought this action to recover certain charges alleged to be owed by defendant William J. McGrath. McGrath defended the action on the ground, among others, that the enactment under which the Agency assessed the charges was unconstitutional. The Agency brought a motion for summary judgment and summary adjudication, contending among other things that McGrath's constitutional challenge was barred by a prior judgment in which the issue of the validity of the charges had been determined adversely to him. McGrath replied that because the action was commenced in municipal court, which lacked jurisdiction over any action involving the legality of a tax or similar charge, the judgment was beyond the rendering court's power and thus void. The trial court rejected this argument and granted summary judgment. We will affirm the court's order insofar as it summarily adjudicated McGrath's defenses concerning the validity of the charge; assuming the municipal the court lacked jurisdiction of those issues when they first arose, the municipal court merged into the superior court prior to trial. Accordingly there was no lack of fundamental jurisdiction to render the judgment. However, we will reverse the summary *judgment* in light of the Agency's failure to establish the amount owed as a matter beyond substantial controversy.

BACKGROUND

McGrath owns property in Watsonville on which he operates a groundwater extraction facility, i.e., a well. In July 1995, the Agency began imposing groundwater augmentation charges against the extraction of water from this well. The Agency contends, and McGrath does not dispute, that none of these charges have ever been paid.

On February 5, 1998, the Agency filed a complaint in the Municipal Court of Santa Cruz County, alleging that McGrath owed $1,812.50 plus interest. On June 5, 1998, McGrath filed an answer generally denying the allegations of the complaint and affirmatively alleging that the charges sought had been

"levied contrary to law, in that they are being collected for purposes other than those specifically authorized by statute." McGrath appeared at all times in propria persona, though he had the assistance of an attorney in preparing some of his written filings.

Effective July 1, 1998, the Santa Cruz County Municipal Court was unified with the Santa Cruz County Superior Court pursuant to Proposition 220. (Sen. Const. Amend. No. 4/Prop. 220 Cal. Trial Courts Eff. Date of Unification [as of Jan. 29, 2001], <http://www.courtinfo.ca.gov/reference/documents/unidate.pdf> [as of Apr. 27, 2005].) On that date the action automatically became a "limited case" pending before the superior court. (See Cal. Const., art. 6, § 23; Gov. Code, § 70212.)

About a year later the matter came on for trial. The Agency moved in limine to exclude evidence going to the validity of the charges, contending among other things that these challenges were precluded by McGrath's failure to pursue administrative remedies. In opposition, McGrath characterized "the validity of the groundwater augmentation fee" as a "crucial issue" and a "key question." "This case is not a mere collection issue," he wrote. "This case addresses the validity of the assessment and authority of the Agency to impose the augmentation fees on McGrath." In a trial brief he elaborated on his argument that "the Agency, in its quest to raise money, has ignored the express limitations of the Act." The brief appeared to substantially recapitulate an opinion memorandum addressed to the California Farm Bureau Federation, apparently authored by staff counsel for that organization, including the suggestion that the charge might violate Proposition 218, the "Right to Vote on Taxes Act."

On August 4, 1999, the court in that action entered judgment for the Agency in the amount of $2,641.91 plus costs. The judgment recited that the court had "heard the testimony and considered the evidence." So far as the record shows, the judgment was not appealed.

The Agency brought this action on April 30, 2002. It alleged that defendant continued to be delinquent, and prayed for damages "in the amount of at least $32,791.24 (not including the 1999 judgment)." In his answer McGrath admitted that the Agency had sent him billings, that "the notices referred to" in the complaint "were sent to him," and that "the correspondence and proceedings" described in certain allegations occurred. He denied any debt to the Agency and asserted affirmative defenses including that (1) if the charge in question was a "special tax," it violated various constitutional and

statutory provisions; (2) if it was an "assessment," it violated other laws; (3) if it was a "fee or charge for a property related service," it failed to comply with still other laws; and (4) it "fail[ed] to recognize the priority of overlying water rights and is unconstitutional under California Constitution Article X Section 2." McGrath also alleged that the interest sought by the Agency was usurious.

The Agency brought a motion for summary judgment or, in the alternative, for an adjudication as to its first cause of action (statutory liability) and as to defendant's seventh through eleventh affirmative defenses, which concerned the alleged invalidity of the charge as well as a usurious interest rate. The Agency contended that the challenges to the validity of the charge were barred by failure to exhaust administrative remedies, failure to exhaust judicial remedies, and collateral estoppel. McGrath opposed the motion on the ground, among others, that the judgment in the earlier matter would not support a collateral estoppel because it was void.

In response to the summary judgment motion, McGrath admitted that the Agency had brought a previous action against him for unpaid groundwater augmentation charges, that he had asserted affirmative defenses to that complaint, including that the charges were "levied contrary to law," that he had described the "validity of the groundwater augmentation fee" as a "crucial issue" to be decided and a "key question," and that in defense of that action he had alluded to Proposition 218. He did not effectively dispute the point that after a trial in that action, the court had entered judgment against him on the merits.[1]

The Agency claimed that as of December 31, 2002, McGrath owed $33,227.18, with additional charges accruing at the rate of $14.53 per day. McGrath asserted in his declaration that assuming the validity of the charge, the amount due was in dispute and was calculated by him at $10,790, not including the amount embraced in the earlier judgment. He had conceded in deposition that the Agency had sent him invoices for augmentation charges and that he had "not paid any of those invoices." However, the record contains no unequivocal evidence of the dates on which invoices were sent or received.

---

[1] Although McGrath claimed to dispute the fact of the entry of judgment, that claim rested wholly on the premise that the "[j]udgment is void for lack of subject matter jurisdiction." Because this statement has no tendency to disprove the asserted fact, we treat the fact as admitted for present purposes.

The court granted summary judgment, essentially sustaining all of the Agency's contentions concerning both the viability of the affirmative defenses and the amount due. McGrath filed this timely appeal.[2]

DISCUSSION

## I. *Collateral Estoppel*

■ The trial court summarily adjudicated McGrath's defenses as being without merit on the ground, among others, that those defenses are barred by the doctrine of collateral estoppel. That doctrine, known more recently as issue preclusion, prevents a party from obtaining a second adjudication of an issue that has already been adjudicated against that party on the merits by a court of competent jurisdiction. The doctrine operates to "bar relitigation of *issues* previously litigated between the same parties on a different cause of action if the issues for which collateral estoppel is sought in the second action: (1) are identical to those litigated in the first action; (2) were actually litigated and necessarily decided in determining the first action; (3) are asserted against a participant in the first action or one in privity with that party; and (4) the former decision was final on the merits. [Citation.]" (*Rice v. Crow* (2000) 81 Cal.App.4th 725, 735 [97 Cal.Rptr.2d 110].)

■ McGrath does not dispute the presence of these four elements. He invokes the principle, however, that a *void* judgment will not operate as a bar to relitigation of the issues purportedly adjudicated. (*Rochin v. Pat Johnson Manufacturing Co.* (1998) 67 Cal.App.4th 1228, 1239 [79 Cal.Rptr.2d 719] ["The doctrine of res judicata is inapplicable to void judgments"]; see Rest.2d, Judgments, § 17 [stating general rule that a "valid and final personal judgment" has preclusive effect].) The question, then, is whether the former judgment is truly void.

■ "A judgment is void if the court rendering it lacked subject matter jurisdiction or jurisdiction over the parties. Subject matter jurisdiction 'relates to the inherent authority of the court involved to deal with the case or matter before it.' [Citation.] Lack of jurisdiction in this 'fundamental or strict sense means an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties.' [Citation.]" (*Carlson v. Eassa* (1997) 54 Cal.App.4th 684, 691 [62 Cal.Rptr.2d 884], quoting *Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 288 [109 P.2d 942] (*Abelleira*).)

---

[2] Although McGrath neglected to include the judgment in his appendix, thereby exposing the case to dismissal (see *Berman v. City of Daly City* (1993) 21 Cal.App.4th 276, 279, fn. 1 [26 Cal.Rptr.2d 493]), the appendix in a related appeal, *Pajaro Valley Water Management. Agency v. McGrath* (Apr. 28, 2005, H026738) [nonpub. opn.]) includes a copy of the judgment. We take judicial notice of the judgment to preserve our jurisdiction over the appeal.

■ A court does not necessarily act without subject matter jurisdiction merely by issuing a judgment going beyond the sphere of action prescribed by law. "Speaking generally, any acts which exceed the defined power of a court in any instance, whether that power be defined by constitutional provision, express statutory declaration, or rules developed by the courts and followed under the doctrine of *stare decisis*, are in excess of jurisdiction . . . ." (*Abelleira, supra,* 17 Cal.2d at p. 291.) The distinction is critical, because "[a]ction 'in excess of jurisdiction' by a court that has jurisdiction in the 'fundamental sense' (i.e., jurisdiction over the subject matter and the parties) is not void, *but only voidable.* [Citations.] In contrast to cases involving other types of jurisdictional defects, a party may be precluded from challenging action in excess of a court's jurisdiction when the circumstances warrant applying principles of estoppel, disfavor of collateral attack or res judicata. [Citation.]" (*Conservatorship of O'Connor* (1996) 48 Cal.App.4th 1076, 1088 [56 Cal.Rptr.2d 386], fn. omitted.)

McGrath's argument thus necessarily depends on the premise that the court rendering the earlier judgment acted without jurisdiction in the *fundamental* sense. This premise in turn rests on the statutory exclusion from municipal court jurisdiction of issues concerning the validity of a tax or similar charge. As in effect in February 1998, when the previous action was commenced, Code of Civil Procedure section 86, subdivision (a)(1), granted "original jurisdiction" to the municipal court in "all cases at law in which the demand, exclusive of interest, or the value of the property in controversy amounts to twenty-five thousand dollars ($25,000) or less, *except cases that involve the legality of any tax, impost, assessment, toll, or municipal fine* . . . ." (Stats. 1997, ch. 527, § 2, italics added.) The effect of the italicized language was to "den[y] to the municipal court and confer[] upon the superior court exclusive jurisdiction over cases involving 'the legality of any tax, impost, assessment, toll or municipal fine.' " (*California Employment Stabilization Commission v. Municipal Court* (1944) 62 Cal.App.2d 781, 783 [145 P.2d 361]; see 2 Witkin, Cal. Procedure (4th ed. 1997) Jurisdiction, § 47, p. 588.) It is at least arguable, and we may assume for present purposes, that a municipal court judgment purporting to adjudicate such issues would be jurisdictionally defective in the fundamental sense that the rendering court completely lacked subject matter jurisdiction, rendering the resulting judgment *void* and without preclusive effect.

However, on June 2, 1998, the voters adopted Senate Constitutional Amendment No. 4 (Proposition 220), which had the effect of empowering each county to abolish the municipal court in that county by merging its judges and resources into the superior court. Among the provisions enacted was article 6, section 5, subdivision (e) of the California Constitution,

providing that "the municipal and superior courts shall be unified upon a majority vote of superior court judges and a majority vote of municipal court judges within the county. In those counties, there shall be only a superior court." The courts in Santa Cruz County were unified under these provisions as of July 1, 1998. "[Upon] unification . . . , all causes [were] within the original jurisdiction of the superior court." (Trial Court Unification: Revision of Codes (July 1998) 28 Cal. Law Revision Com. Rep. (1998) 51, 64, fn. omitted (Trial Court Unification).) Accordingly, by August 1999, when judgment was entered in the first action between these parties, the action was pending not before the municipal court—which no longer existed—but the superior court.

Had the judgment been rendered prior to unification it might well be void because McGrath's answer to the complaint, by tendering issues beyond the competence of the municipal court, ousted that court of jurisdiction, quite possibly in the fundamental sense. (See *Wiggins v. Washington Nat. Life Ins. Co.* (1966) 246 Cal.App.2d 840, 848 [55 Cal.Rptr. 129] ["from the moment defendant filed its cross-complaint for declaratory relief in the instant action the municipal court lost jurisdiction over the cause and was obliged to suspend further proceedings in the action and to transfer it to the superior court"].) After unification, however, the case was no longer pending before the municipal court, a court of limited jurisdiction, but before the superior court, a court of general jurisdiction, and indeed the only court in which it could now be tried. (See Trial Court Unification, *supra*, 28 Cal. Law Revision Com. Rep., *supra*, at pp. 64–65 ["In a county in which the courts have unified, the superior court has original jurisdiction of limited civil cases . . . ."]; *Wozniak v. Lucutz* (2002) 102 Cal.App.4th 1031, 1036, fn. 1 [126 Cal.Rptr.2d 310] [parties' references to " 'limited jurisdiction court' " and " 'unlimited jurisdiction court' " were "misleading misnomers" because "[a]fter unification, there is only one court—the superior court [citation]; in the superior court, there are either limited civil cases or unlimited civil cases"].) The court therefore did not lack the fundamental power to adjudicate the matter. (See *Glade v. Glade* (1995) 38 Cal.App.4th 1441, 1449 [45 Cal.Rptr.2d 695] ["there is only one superior court in a county and jurisdiction is . . . vested in that court, not in any particular judge or department. Whether sitting separately or together, the judges hold but one and the same court"].)

It is true that after the matter was converted to a superior court action, McGrath's challenge to the validity of the charge continued to have some potential effect. Code of Civil Procedure section 86, subdivision (a)(1), defines limited cases as those in which the amount in controversy is not more than $25,000, but adds, "This paragraph does not apply to cases that involve the legality of any tax, impost, assessment, toll, or municipal fine . . . ." Thus

when McGrath's answer tendered issues concerning the validity of the charges, it had the effect of potentially changing the matter from a limited case to an unlimited case. That change, however, would not affect the fundamental jurisdiction of the court; it would only relieve the parties of certain limitations affecting the *manner* in which the case could be adjudicated. (See *Snukal v. Flightways Manufacturing, Inc.* (2000) 23 Cal.4th 754, 763 [98 Cal.Rptr.2d 1, 3 P.3d 286], quoting Trial Court Unification, *supra*, 28 Cal. Law Revision Com. Rep., *supra*, at pp. 64–65, fn. omitted [" 'In a county in which the courts have unified, the superior court has original jurisdiction of limited civil cases, but these cases are governed by economic litigation procedures, local appeal, filing fees, and the other procedural distinctions that characterize these cases in a municipal court' "].)

McGrath's answer thus created an occasion or opportunity to disqualify the matter from treatment as a limited case. (Code Civ. Proc., § 86, subd. (a).) In contrast to the previous regime, however, this disqualification did not call for automatic transfer to a different court; instead it provided a basis for *reclassification* of the matter for treatment as an *unlimited* civil case *within the same court*. (See Code Civ. Proc., § 403.010 et seq.) This would have (1) exempted the case from certain "economic litigation procedures" (Trial Court Unification, *supra*, 28 Cal. Law Revision Com. Rep., *supra*, at p. 65; see Code Civ. Proc., §§ 90–98), (2) shifted appellate jurisdiction from the appellate division of the superior court to the court of appeal (Code Civ. Proc., § 904.2; cf. *id.*, § 904.1); (3) subjected the matter to increased filing fees, and in particular, a "reclassification fee" chargeable to the party whose pleading triggered the reclassification (Code Civ. Proc., §§ 403.040, subd. (c), 403.060); and (4) removed certain restrictions on the preclusive effect of a judgment.[3]

■ The fact that the matter was subject to reclassification had no effect on the fundamental jurisdiction of the court. Indeed the statutes governing reclassification strongly indicate that a matter may proceed to trial and judgment as a limited case even though it might be subject to reclassification. Thus the statutes provide that the clerk shall reclassify a matter upon tendering by a party of a cross-complaint or amended pleading that requires reclassification. (Code Civ. Proc., §§ 403.030, 403.020.) This duty only arises, however, if the pleading is accompanied by the required classification fee. Failing that, "the clerk shall not reclassify the case and the case shall remain and proceed as a limited civil case." (Code Civ. Proc., § 403.060, subd. (b);

---

[3] In a limited civil case, the judgment concludes "the parties and their successors in interest" with respect to the matter directly adjudged, but "does not operate as collateral estoppel" in subsequent litigation with strangers to the action. (Code Civ. Proc., § 99.)

see §§ 403.030, 403.020.) A matter may also be reclassified on the motion of a party, but reclassification is only mandatory if the motion is filed within a specified time, or the moving party shows "good cause for not seeking reclassification earlier." (Code Civ. Proc., § 403.040, subd. (b)(2); see *id.*, subd. (a).) In all other situations, the motion is addressed to the discretion of the court. (Code Civ. Proc., § 403.040, subd. (a) ["The court, on its own motion, may reclassify a case at any time"].) Moreover, if the court grants such a motion and no party pays a required reclassification fee within a stated time, the court "may," among other options, "order the case to proceed as a limited civil case." (Code Civ. Proc., § 403.040, subd. (d)(3).)

■ The Code thus explicitly contemplates situations in which a matter can proceed as a limited case even though it possesses characteristics that would support (and require on timely motion and payment of fees) reclassification to unlimited status. These provisions cannot be reconciled with McGrath's premise that the court presiding over a limited case lacks jurisdiction in the fundamental sense merely because the case could be reclassified as unlimited. In contrast, prior to unification a transfer to superior court was *mandatory* no matter when or how the jurisdictional defect first appeared.[4] (Code Civ. Proc., § 396.)

---

[4] As worded at the time of reunification, Code of Civil Procedure section 396 provided in pertinent part: "If an action or proceeding is commenced in . . . a court which has jurisdiction of the subject matter . . . and it thereafter appears from the verified pleadings, or at the trial, or hearing, that the determination of the action or proceeding, or of a cross-complaint, will necessarily involve the determination of questions not within the jurisdiction of the court, in which the action or proceeding is pending, the court, whenever such lack of jurisdiction appears, must suspend all further proceedings therein and transfer the action . . . to a court having jurisdiction thereof . . . ." (Code Civ. Proc., former § 396, as amended by Stats. 1974, ch. 1369, § 1, pp. 2963–2964.)

Although Code of Civil Procedure section 396 remains on the books in substantially this same form, it seems superfluous now that the courts in all counties have achieved unification. It is possible, though a point of disagreement, that it retains vitality as empowering the *superior* court to transfer cases within the exclusive original jurisdiction of the *appellate* courts. (See *Padilla v. Department of Alcoholic Beverage Control* (1996) 43 Cal.App.4th 1151 [51 Cal.Rptr.2d 133] [superior court should have transferred proceeding to review revocation of alcohol license]; contra, *TrafficSchoolOnline, Inc. v. Superior Court* (2001) 89 Cal.App.4th 222 [107 Cal.Rptr.2d 412] [disagreeing with *Padilla* but failing to identify any other situation to which section 396 remains applicable]; cf. *id.* at pp. 237–238 (conc. & dis. opn. of Grignon, J.) [partial dissent on grounds that majority analysis is dictum and that *Padilla* is correct].) Whatever its expected application in the wake of unification, the Legislature cannot have been intended it to govern limited cases in unified superior courts because, among other things, (1) after unification, misclassified cases are not "transferred" to another court, but remain in the court where they were filed, whether or not they are reclassified; and (2) if the "transfer" contemplated by Code of Civil Procedure section 396 were understood (contrary to its plain meaning) as a reference to "reclassification," its requirement of immediate sua sponte transfer would clash directly with the statutory procedures for reclassification summarized above.

Nor does an adjudication of these issues in a limited case offend any underlying policy of which we are aware. The general purpose of requiring such issues to be adjudicated in the superior court, rather than the municipal court, was to protect the fiscal interests of *taxing authorities*. (See *Madera v. Black* (1919) 181 Cal. 306, 311 [184 P. 397] [general purpose of the provision was "to give to the sovereign power of the state . . . the protection of having the legality of any exaction of money for public uses or needs cognizable in the first instance in the superior courts alone"].) An additional rationale was suggested in *Unemp. Etc. Com. v. St. Francis Homes Assn.* (1943) 58 Cal.App.2d 271, 280 [137 P.2d 64], based upon the Supreme Court's appellate jurisdiction (as distinct from discretionary jurisdiction) over actions challenging the legality of a tax. This provision was evidently intended to ensure *statewide uniformity* on issues concerning the scope of a public entity's taxing powers, an objective facilitated by excluding such issues from municipal court jurisdiction. (*Ibid.*) That rationale, however, lost all vitality in 1966 when the Supreme Court's appellate jurisdiction over such cases was abolished. (See 2 Witkin, Cal. Procedure, *supra*, Courts, § 333, pp. 402–403.) The exclusion of such cases from municipal court jurisdiction continued to serve the objective noted in *Madera v. Black, supra*, 181 Cal. 306, i.e., protecting taxing entities by guaranteeing that any challenge to their taxing power would be tested under the more rigorous procedures available in superior court. This rationale doubtless retains vitality after reunification. But the simple fact is that neither party here sought to take advantage of the protections of unlimited status. Although it was McGrath who made those protections available by pleading constitutional defenses, and the Agency for whose benefit they were made available, neither party sought to invoke them. Under these circumstances no discernible policy would be served by depriving the judgment of preclusive effect.

In sum, we are unable to discern any basis in precedent or policy to deny the former judgment the preclusive effect formerly granted to municipal court judgments and now granted to judgments in limited cases: It is, "in respect to the matter directly adjudged, . . . conclusive between the parties and their successors in interest . . . ." (Code Civ. Proc., § 99.) Since McGrath does not dispute that the previous judgment "directly adjudged" the affirmative defenses at issue here, the trial court properly granted summary adjudication against him with respect to those defenses. This conclusion makes it unnecessary to consider the other grounds on which the Agency attacked those defenses.

## II. *Damages*

### *Amount Owed*

McGrath contends that even if the trial court properly adjudged his affirmative defenses to be without merit, it erred by entering judgment for the Agency because the record disclosed triable issues of fact concerning the amount owed.

██ The Agency's damages were, of course, an element of its cause of action. (See 5 Witkin, Cal. Procedure, *supra*, Pleading, § 887, p. 346; *Goehring v. Chapman University* (2004) 121 Cal.App.4th 353, 364 [17 Cal.Rptr.3d 39].) As a result, the Agency could not establish a prima facie entitlement to summary judgment without showing both the fact *and the amount* of damages. (See Code Civ. Proc., § 437c, subd. (p)(1) [moving plaintiff establishes threshold entitlement to summary judgment if it "prove[s] each element of the cause of action entitling the party to judgment on that cause of action"].) To carry this burden the Agency relied entirely on the declaration of Charlies McNiesh, its general manager, who averred that McGrath's accounts "are delinquent from 1995 to present time. These accounts are reflected in bills sent to him that are detailed statements of what he owes. With respect to the first cause of action . . . the amount owed is $33,277.18. This reflects the *amounts which were billed* to Mr. McGrath for three years up to the filing of the complaint, plus interest, plus a non-metered water use fee pursuant to the statute for those charges within the year before the filing of the complaint. In addition, because a billing cycle has passed since the filing of the Complaint, the Agency has included charges incurred since then—charges reflected in the July semi-annual bill, including interest on the July bill up to and including December 31, 2002, plus a non-metered water use fee pursuant to the statute for these charges. All of these fees have been calculated pursuant to a fee schedule adopted by [the Agency] under Ordinance 95-1 and 96-2, as amended. *The computation is attached as Exhibit B.*" (Italics added.) Exhibit B consists of a table summarizing the Agency's claimed damages under the heading "PVWMA [¶] William McGrath [¶] 12/31/02."

McGrath objected to the quoted paragraph on the grounds that it lacked a foundation in personal knowledge and constituted improper opinion testimony under Evidence Code section 803. He objected to exhibit B on the grounds of Evidence Code sections 1201 (hearsay), 1401 (authentication of writings), 1521, subdivision (a)(2) (secondary evidence of writing), and 1561

(production of business records). The trial court overruled these objections, stating that "pursuant to Evidence Code section 1521 and hearsay rules, the plaintiff is entitled to provide a summary calculation of damages to simplify the presentation."

This ruling was erroneous; several of McGrath's evidentiary objections were well-taken. The declaration recapitulated the contents of exhibit B, which in turn recapitulated the contents of certain bills not before the court. All three—the bills, the exhibit, and the declaration—were hearsay, i.e., "evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated." (Evid. Code, § 1200, subd. (a).) To overcome a hearsay objection, the Agency had to show that one or more hearsay exceptions applied at *each* of these three levels. (Evid. Code, § 1201.)

■ The McNiesh declaration itself is hearsay (*Windigo Mills v. Unemployment Ins. Appeals Bd.* (1979) 92 Cal.App.3d 586, 597 [155 Cal.Rptr. 63]), but is made specially admissible in connection with motions in general and summary judgment motions in particular (Code Civ. Proc., § 437c, subds. (b)(1) & (2), (d); see *id.*, §§ 2009, 2015.5). This special authorization implies a hearsay exception, so that in the situations specified by statute, *otherwise admissible* testimony may be given by declaration, provided it is *under oath.* (1 Witkin, Cal. Evidence (3d ed. 1986) Hearsay, § 297, pp. 1006–1007.)

Here, however, the declaration explicitly recapitulated the contents of a second writing, exhibit B. That document was not incorporated in the McNiesh declaration, or even vouched for; it was merely described as "attached." It was therefore not given under oath, and did not fall within the implicit hearsay exception for affidavits and declarations.

Moreover, the McNiesh declaration explicitly describes the "amount owed" (i.e., the matter asserted) as being derived from yet a third level of documentary hearsay, the "bills" containing the "amounts" that were "reflected in" the final figure. The original bills might be admissible over a hearsay objection as business records (Evid. Code, § 1271) or perhaps official records (Evid. Code, § 1280), but to establish either exception would require a showing of the time and circumstances of the documents' creation. (Evid. Code, §§ 1271, 1280.) No such showing was attempted. Accordingly, of the three levels of hearsay on which the Agency's proof depended, an exception appears only for

one—the McNiesh declaration. This falls short by two-thirds. The evidence of the amount of arrearages was objectionable, and upon proper objection, inadmissible. Given that McGrath did object on the ground (among others) of hearsay, the evidence cannot sustain the order granting summary judgment.

 In overruling McGrath's objections, the trial court cited Evidence Code section 1521 (section 1521) while alluding to unspecified hearsay exceptions. Section 1521 permits the introduction of "otherwise admissible secondary evidence" to prove the contents of a writing. It does not excuse the proponent from complying with other rules of evidence, most notably, the hearsay rule. (*Dart Industries, Inc. v. Commercial Union Ins. Co.* (2002) 28 Cal.4th 1059, 1070, fn. 2 [124 Cal.Rptr.2d 142, 52 P.3d 79].) As applicable here, section 1521 means only that the Agency could introduce secondary evidence to establish the contents of bills if (1) the contents themselves were admissible, and (2) the secondary evidence was "otherwise admissible." (§ 1521, subd. (a).) Here the contents of the bills were hearsay. In the absence of a showing that they came within an exception, secondary evidence of their contents was no more admissible than the bills themselves, which is to say, not at all.

 Nor are we aware of any hearsay exception entitling a plaintiff, in the words of the trial court's order, "to provide a summary calculation of damages to simplify the presentation." Presumably a written summary of a party's calculation of damages might be admissible to illustrate the *computational formulas* a party contends should be used to derive total damages from data otherwise established through competent evidence. Such a summary might be admissible for the nonhearsay purpose of proving not the amounts actually due, but the manner in which they were derived from numbers otherwise before the factfinder. There may be other circumstances in which such a summary could be admitted over a hearsay objection. One thing, however, is certain: If it is offered to prove the actual values on which a party's damages calculation rests, the summary is hearsay and must, on proper objection, be brought within an exception or excluded from evidence. Since the Agency failed to do this here, McGrath's hearsay objection should have been sustained.

### *Failure to Exhaust Administrative Remedies*

As a separate ground for finding the amount of damages to be without controversy, the Agency asserts that McGrath's efforts to contest the amount due are barred by his failure to exhaust the remedy provided by section 8 of Ordinance 93-1, which provides, "Any ground water extraction facility owner or operator who believes [a] charge is inaccurate or incorrect shall have the right to an administrative appeal for up to sixty (60) days after the receipt of

such assessment."[5] The Agency contends that McGrath never filed an administrative appeal as to any of the sums in question and is therefore barred from contesting them in court.

The first problem with this contention is that the cited ordinance does not require McGrath to *file* an appeal; it only grants him the right to *have* an appeal. In the absence of a cogent demonstration to the contrary, we must assume that *any* timely administrative challenge by McGrath could be found to be an "administrative appeal" sufficient to preserve his right to contest the charges. Of course, to have that effect the appeal had to be "made" within 60 days "after the receipt of [the challenged] assessment." Therefore, to establish an entitlement to summary judgment on this basis, the Agency had to conclusively demonstrate that *no part* of the judgment included charges as to which an "administrative appeal" was "made" within 60 days after receipt of assessment.

The Agency's showing was entirely inadequate on this point. First, the Agency offered *no* evidence tending directly to establish the dates on which McGrath received any of the contested assessments. McNiesh declared only that "Mr. McGrath did not challenge the correctness of the Agency's calculations of the augmentation charges within 60 days of the time these fees were *charged to him* as provided for in Section 8.B. of Ordinance 93-1, as amended." (Italics added.) The phrase "charged to him" is patently ambiguous in the present context, and nothing in the record resolves the ambiguity.

Although the point is not made by the Agency, it might be contended that certain exhibits to the complaint, the contents of which were arguably admitted in some part by McGrath's answer, set forth dates on which invoices were sent to McGrath. Even if all this were granted, however, it would not carry the Agency to victory, because the amount ultimately claimed on summary judgment included sums for which no bill was shown to have *ever* been sent. The last billing date suggested in the exhibits to the complaint is January 31, 2002. The summary set forth in exhibit B to the motion for summary judgment includes charges for the period "5/1/02–12/31/02," plus interest on those charges for "10/1/02 to 12/31/02." Neither the pleadings nor the competent evidence on summary judgment support a finding that any bill was ever sent to McGrath for these charges, let alone the date on which it was sent (or even more pertinently, received). As a result, it is impossible to say that the asserted obligation to exhaust administrative remedies ever arose with respect to that sum. It follows that not all of the damages claimed by the Agency were shown to be beyond dispute, and that the trial court erred in concluding that the Agency had established an entitlement to judgment.

---

[5] The Agency contends that this same provision barred McGrath's arguments concerning the *validity* of the charges, but as we have already noted, it is unnecessary here to reach this issue.

We also note that on January 10, 2002, the Agency notified McGrath that it would conduct a hearing *on its own motion* to review his bills. It invited him to attend that hearing, which he did. He also took advantage of the Agency's invitation to appeal its decision at that hearing, which was apparently to initiate litigation against him. From one summary of charges attached to the complaint it might be inferred that several invoices were *sent* to McGrath on November 9, 2001, which is just 62 days before the January 10, 2002 letter announcing the Agency's sua sponte review. We take judicial notice of the fact that November 9, 2001, was a Friday, making it entirely possible that McGrath did not *receive* the November 9, 2001 invoices until November 12, 2001, 59 days before the sua sponte review letter. We need not decide whether this evidence is sufficient to support an inference that McGrath adequately exhausted his administrative remedies as to those sums. We hold only that the record is *in*sufficient to establish the Agency's claimed entitlement to judgment.

We conclude that the Agency failed to establish its damages as a matter beyond controversy and therefore failed to establish an entitlement to summary judgment.

### DISPOSITION

The judgment is reversed and the trial court is directed to vacate the order granting summary judgment and summary adjudication and enter a new order granting summary adjudication only as to the affirmative defenses specified in the motion.

Each party will bear its own costs on appeal.

Elia, J., concurred.

**MIHARA, J., Concurring.**—I concur in the majority opinion's analysis of the res judicata issue and in the judgment. Although I would also conclude that the trial court erred in granting summary judgment, I would premise this conclusion solely on the trial court's erroneous acceptance of Pajaro Valley Water Management Adency's (PVWMA's) contention that McGrath was precluded from contesting the amount due because he had failed to exhaust his administrative remedies. While it appears to be undisputed that McGrath received the billings for the charges that had accrued up to the filing of the complaint and did not exercise his "right to an administrative appeal" regarding those charges, there is no evidence that he failed to do so as to the charges that accrued after the filing of the complaint.

PVWMA did not establish that McGrath ever had the opportunity to administratively challenge these postcomplaint charges and therefore he could not be precluded from disputing the amount of those charges. Since McGrath submitted a declaration challenging all of the charges, there was at least a material factual dispute regarding the postcomplaint charges, and this factual dispute precluded the trial court from entering summary judgment for PVWMA for all of the charges. I see no need to address an evidentiary issue that has not been raised on appeal (Gov. Code, § 68081) and that is not likely to recur on remand.

A petition for a rehearing was denied May 26, 2005.