Filed 8/29/22 Mendez v. Civil Service Commission, etc. CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MICHELLE MENDEZ,<br><br>          Petitioner and Appellant,<br><br>v.<br><br>CIVIL SERVICE COMMISSION,<br>COUNTY OF SAN MATEO et al.,<br><br>          Respondents. | A163271<br><br>(San Mateo County<br>Super. Ct. No. 20CIV04515) |

Michelle Mendez appeals from an order denying her petition for a writ of administrative mandate. (Code Civ. Proc., § 1094.5; statutory references are to this Code unless otherwise indicated.) Mendez contends that the trial court erred by refusing to compel the Civil Services Commission of San Mateo (the Commission) to set aside a decision terminating Mendez's employment with the San Mateo Probation Department (the Department). We affirm.

**BACKGROUND**

Mendez was hired by the Department in November 2001. In May 2019, she held the position of Management Analyst. In that position, Mendez was required to work at least eight hours per workday and 40 hours per workweek. If she worked less than eight hours on a given workday, Mendez was required to report her unworked time as vacation or " 'comp' " time on

1

her employee timecard. On May 9, Mendez's supervisor, Noelle Vergara, was handling an employment matter that was unrelated to Mendez when she found a discrepancy in Mendez's time records. While reviewing a recently terminated employee's "Skype" conversations, Vergara discovered that on March 25, 2019, Mendez went to Costco during her working hours even though she recorded an eight hour workday on her timecard. Vergara discussed the discrepancy on Mendez's timecard with Assistant Chief Probation Officer Bonnie MacAskill, and then referred the matter for an Internal Affairs investigation.

Deputy Chief Probation Officer Christopher Abalos conducted an internal investigation on behalf of the Department. Abalos compared Mendez's time records for the period from January 27 through June 23, 2019, with Mendez's other computer records, cardkey building entry data, and photos from cameras at the Department's office. Abalos identified 13 material discrepancies on Mendez's timecards for the period between May 27 and June 27 and concluded from his investigation that Mendez worked significantly less than the required 40 hours per week during weeks that she reported working a full 40 hours. Abalos decided to notify the District Attorney of possible fraud by Mendez after he discussed his findings with Probation Chief John Keene, Assistant Chief MacAskill, and County Counsel. The District Attorney investigated the matter but did not file charges against Mendez.

Meanwhile, on August 16, 2019, Abalos interviewed Mendez about her timecards. Mendez declined to answer many questions on the advice of her counsel, who accompanied her to the interview. Mendez also stated that she would need to review records in order to answer questions about work she

2

performed during the days in question. After the interview, Mendez did not provide the Department with any information about this matter.

In December 2019, the Department advised Mendez that it intended to terminate her employment and notified her of her right to a hearing and to submit written materials. Mendez did not submit written materials in response to the notice. The Department held a hearing on the matter, but Mendez and her attorney left during a recess that was called because of a verbal altercation between Mendez's attorney and County Counsel.

On February 11, 2020, Mendez was terminated from her employment. The Department's decision letter set forth five grounds for dismissal under Civil Service Commission Rule XIII, Section 4: (1) absence from the workplace without authorization or adequate explanation; (2) dishonesty or conduct contrary to commonly accepted standards of justice; (3) willful misconduct causing damage to public property or a waste of public supplies or time; (4) insubordination; and (5) failure to follow policies, procedures or work rules.

Mendez appealed her dismissal to the Commission. The Commission granted Mendez's request that her hearing be open to the public. Thirteen witnesses testified at the hearing, which was held over two full days on June 26 and July 9, 2020. On July 11, the Commission announced its decision to uphold Mendez's dismissal, and on July 16, it issued a 10-page decision containing findings of fact supporting its decision. The Commission concluded that the Department proved by a preponderance of the evidence four of the five grounds for discipline that were set forth in its February 2020 decision letter. The Department did not prove that insubordination was a ground for disciplining or terminating Mendez, the Commission found.

In October 2020, Mendez filed this writ proceeding, naming the Commission as respondent and the Department as the real party in interest. Mendez alleged that the Department repeatedly retaliated against her for "raising concerns about questionable management decisions and operational changes" by, among other things, using alleged timecard discrepancies as a pretext for terminating her employment. She sought a peremptory writ of mandate compelling the Commission to set aside its July 2020 decision and to direct the Department to reinstate Mendez's employment with full back pay and benefits. In December, the Commission lodged a nine-volume record of evidence that had been submitted during the administrative appeal hearing.

The issues raised in Mendez's petition were briefed pursuant to a stipulated schedule approved by the trial court. According to Mendez's amended petition, the Commission (1) failed to give due consideration to evidence that Mendez's termination was retaliatory and pretextual, (2) precluded Mendez from introducing evidence regarding the Department's treatment of similarly situated employees, and (3) denied Mendez a fair hearing.

Following a hearing on March 5, 2021, the trial court denied Mendez's petition. On March 11, Mendez filed a request for a statement of decision, in which she purported to identify one hundred principal controverted issues, all framed as questions and many unsupported by citations to the record or legal authority. On March 22, the Department filed a proposed statement of decision, which led Mendez to file extensive objections and to request another hearing.

On April 15, 2021, the trial court issued a 20-page statement of decision. Exercising its independent judgment, the court found, among other things, that (1) the weight of the evidence supports the Commission's decision

4

upholding Mendez's dismissal, and (2) "no procedural irregularities in the process" require a contrary conclusion. On May 28, the court filed an addendum to its statement of decision after reviewing Mendez's objections and holding another hearing. In its addendum, the court "reaffirm[ed]" its decision denying Mendez's petition, and overruled Mendez's objections to the statement of decision "in their entirety." Judgment was entered on June 8, 2021.

## DISCUSSION

### I. Standards of Review

Mendez filed her mandate petition under section 1094.5, which provides for judicial review of a final administrative decision made as the result of a proceeding that requires an evidentiary hearing. (§ 1094.5, subd. (a).) Under this statute, the court's inquiry extends to questions whether the agency acted within its jurisdiction, whether there was a fair trial, and whether the agency committed a prejudicial abuse of discretion. (*Id*. at subd. (b).) "Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence." (*Ibid*.)

In the present case, the trial court was required to exercise independent judgment when reviewing the Commission's findings because the termination of public employment affects a fundamental vested right. (*Melkonians v. Los Angeles County Civil Service Com.* (2009) 174 Cal.App.4th 1159, 1167 (*Melkonians*).) Under this standard, an abuse of discretion is established if the trial court determines that the agency's findings are not supported by the weight of evidence. (§ 1094.5, subd. (c).) As noted, the trial

5

court found no abuse of discretion in the Commission's decision to uphold the Department's termination of Mendez's employment.

On appeal from a ruling on a petition for writ of administrative mandate, we review the trial court's findings for substantial evidence, even in cases where the trial court independently reviewed the evidence. (*Melkonians, supra*, 174 Cal.App.4th at p. 1168.) The court's legal determinations are reviewed de novo. (*Ibid; Bautista v. County of Los Angeles* (2010) 190 Cal.App.4th 869, 875.) Here, Mendez concedes that the trial court's findings are supported by substantial evidence. Thus, she does not challenge the Commission's factual findings that there are four distinct valid grounds supporting the Department's decision to terminate her employment. Instead, Mendez contends that the trial court made erroneous legal rulings that are subject to de novo review because they were based on undisputed facts.

Since Mendez does not challenge the sufficiency of the evidence, the pertinent facts are set forth in the trial court's detailed statement of decision. (See e.g. *Emma Corp. v. Inglewood Unified School Dist.* (2004) 114 Cal.App.4th 1018, 1021.)[1] As we will explain, many of the issues that Mendez asks us to review involve factual disputes that were resolved against her. None are grounds for reversal.

---

[1] We found unhelpful the statement of facts in Mendez's appellate brief, which is argumentative and ignores the substantial evidence rule. (See e.g. *In re Marriage of Fregoso & Hernandez* (2016) 5 Cal.App.5th 698, 703 [under substantial evidence review, we do not look for evidence in the record to support a different finding]; *Sieg v. Fogt* (2020) 55 Cal.App.5th 77, 88–89 [if the judgment is supported by substantial evidence, it does not matter whether other facts in the record would have supported a different result]; see also *Adoption of Arthur M.* (2007) 149 Cal.App.4th 704, 717 [trier of fact not bound by uncontradicted testimony, when other evidence supports the finding].)

## II. Mendez's Right to an Advisement of her Constitutional Rights

Mendez contends that she is entitled to reinstatement of her position with full back pay because Deputy Chief Abalos failed to give her an adequate advisement of her constitutional rights before interviewing her about her timecard discrepancies. (Citing *Lybarger v. City of Los Angeles* (1985) 40 Cal.3d 822 (*Lybarger*).) According to this argument, undisputed facts compel a finding that the Department violated Mendez's constitutional rights by failing to "comply" with *Lybarger*.

*Lybarger* involved a police officer who was terminated for insubordination because he failed to respond to questions by his employer about a criminal investigation of activities involving his unit. (*Lybarger*, *supra*, 40 Cal.3d at pp. 825–826.) The former officer challenged his termination by filing a petition for writ of mandate and appealed the judgment denying his petition. (*Id*. at p. 826.) Appellant claimed that he could not be disciplined for exercising his constitutional right to remain silent. Our Supreme Court disagreed, holding that "[a]s a matter of constitutional law, it is well established that a public employee has no absolute right to refuse to answer potentially incriminating questions posed by his employer. Instead, his self-incrimination rights are deemed adequately protected by precluding any use of his statements at a subsequent criminal proceeding." (*Id*. at p. 827.)

The *Lybarger* court also found that there is no statutory right to remain silent under the Public Safety Officers Procedural Bill of Rights Act (Govt. Code, § 3300 et seq.), which expressly contemplates that a public safety officer's refusal to answer questions relating to an investigation may result in punitive action (*id*. at § 3303, subd. (e)). (*Lybarger*, *supra*, 40 Cal.3d at p. 827.) However, under that Act the appellant did have a statutory right to

be fully informed of his constitutional rights prior to questioning by his employer because he had been identified as a potential suspect. (*Lybarger*, at pp. 828–829, citing § 3303, former subd. (g); see § 3303, subd. (h).)

The *Lybarger* court held that an adequate advisement in the context of a public employer's administrative inquiry into possible criminal conduct should inform the employee that: (1) he or she has the right to the presence and assistance of counsel; (2) although the officer has the right to remain silent and not incriminate herself, silence may be deemed insubordination and lead to administrative discipline; and (3) a statement made under "compulsion of the threat of such discipline" may not be used against the officer in a subsequent criminal proceeding. (*Lybarger*, *supra*, 40 Cal.3d at p. 829.)

When the *Lybarger* appellant was interviewed by his former employer, he had been advised about the adverse consequences of remaining silent, but he was not advised that a statement made under compulsion of the threat of discipline could not be used against him in a subsequent criminal proceeding. (*Lybarger*, *supra*, 40 Cal.3d at p. 829.) The omission was prejudicial, the court found, and required the trial court to "annul the administrative decision terminating appellant's employment" because the record showed that if appellant and his counsel had received this advisement, appellant "might well have elected to cooperate rather than remain silent." (*Id*. at p. 830.)

In the present case, Mendez contends that the Department violated her rights under *Lybarger* by failing to provide her with "use immunity" prior to the investigatory interview conducted by Abalos, and then subsequently claiming that her assertion of her right to remain silent constituted insubordination. Relying on a transcript of the August 2019 internal affairs interview, Mendez acknowledges that Abalos gave her an advisement, but

she contends it was "botched" and "muddled." Moreover, Mendez argues, the advisement was deficient because Abalos failed to "unequivocally advise" her that she had use immunity. In its addendum to the statement of decision, the trial court rejected Mendez's *Lybarger* claim for three independent reasons. We agree with all of them.

First, Mendez forfeited her *Lybarger* claim. In her appeal before the Commission, Mendez did not contend that the Department committed a *Lybarger* violation. Nor did she allege in her mandate petition that the Commission erred by failing to overturn the Department's decision due to a *Lybarger* violation. Instead, she made this claim for the first time in her April 27, 2021, objections to the statement of decision. These facts substantially support the trial court's finding that Mendez waived (or forfeited) this claim. (*Garcia v. Haralambos Beverage Co.* (2021) 59 Cal.App.5th 534, 541 [" 'waiver is generally a question of fact, and the trial court's finding of waiver is binding on us if it is supported by substantial evidence.' "]; *Padilla v. Greater El Monte Community Hospital* (2005) 129 Cal.App.4th 667, 670 [failure to timely object to purported error in the trial court waives objection on appeal].)

Mendez argues that she did not waive the alleged *Lybarger* violation because she has always maintained that she had an absolute right not to answer questions during the Abalos interview. This argument conflates two distinct issues. The question before us is not whether Mendez should have answered Abalos's questions, but whether she made a timely claim that the Department violated *Lybarger* by failing to advise her adequately about her constitutional rights. Evidence that Mendez did not make this claim until after the trial court denied the mandate petition supports the trial court's finding that this claim is waived or forfeited.

9

Mendez contends that she may dispute the adequacy of the *Lybarger* admonition for the first time on appeal because her claim presents an issue of law affecting her fundamental rights. Mendez's cited authority does not support her contention that the adequacy of a *Lybarger* advisement is a "legal issue." For example, she relies on *People v. Vera* (1997) 15 Cal.4th 269. That case, which has nothing to do with *Lybarger*, involved waiver of the statutory right to a jury trial on prior-prison-term allegations. (*Id*. at p. 272.) Moreover, the alleged error *was* forfeited in *Vera* because not asserted in the trial court. (*Ibid*.)

Whether or not the adequacy of a *Lybarger* advisement presents an issue of law, Mendez fails to demonstrate that she is excepted from the settled principle that " ' " ' "a constitutional right," or a right of any other sort, "may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." ' " ' " (*Keener v. Jeld-Wen, Inc.* (2009) 46 Cal.4th 247, 264; see e.g. *People v. Holt* (1997) 15 Cal.4th 619, 666 [claim that "*Miranda* advice was not adequate" was not "preserved for appeal"].)

Turning to the second ground for rejecting this claim, the trial court found that Abalos delivered a proper *Lybarger* admonishment, and that any confusion about the meaning of his statements was "caused by Mendez's attorney" who accompanied her to the interview. We agree. Contrary to Mendez's appellate argument, Abalos did expressly advise Mendez that "any statement under a compulsion of a threat of discipline" could not be "used against [her] in a subsequent criminal proceeding." Furthermore, Mendez's attorney repeatedly interrupted Abalos as he attempted to read the advisement. The extent of disruption supports an inference that it was

10

intentional, particularly in light of the trial court's observation that counsel engaged in disruptive behavior on other occasions during the proceedings.

Mendez's argument that the admonishment was deficient because Abalos refused to grant her use immunity is inconsistent with governing law. Under *Lybarger,* an employer conducting a noncriminal public employment investigation "acts legally" by demanding "job-related information from its employee, while advising that the employee does not thereby surrender the constitutional right against use of the information in a subsequent criminal prosecution." (*Spielbauer v. County of Santa Clara* (2009) 45 Cal.4th 704, 727 (*Spielbauer*).) The employer is "not further required to seek, obtain, and confer a formal guarantee of immunity before requiring its employee to answer questions related to that investigation." (*Id.* at p. 710.)

Finally, we affirm the trial court's ruling that any error associated with the *Lybarger* advisement "is of no import because the Commission found that there was no insubordination." *Lybarger* held that a public employee who was terminated for insubordination was entitled to have his job back because his employer failed to advise him that statements made under a threat of termination could not be used against him in a subsequent criminal action. (*Lybarger*, *supra*, 40 Cal.3d at pp. 828–830.) This holding does not apply in the present case because the Commission upheld Mendez's termination on grounds that did not include insubordination. Indeed, the Commission made an express finding that Mendez's "refusal to answer certain questions" during the Abalos interview "per the advice of her counsel did not rise to the level of insubordination." Because Mendez was not terminated for insubordination, her untimely request for reinstatement under *Lybarger* necessarily fails.

11

### III. Mendez's Right to a Pre-Dismissal Hearing

Mendez contends the trial court committed reversible error by disregarding her evidence that the Department violated *Skelly v. State Personnel Board* (1975) 15 Cal.3d 194. In *Skelly*, our Supreme Court addressed the procedural due process that must be afforded a permanent civil service employee before terminating her employment. *Skelly* holds that "preremoval safeguards must include notice of the proposed action, the reasons therefor, a copy of the charges and material upon which the action is based, and the right to respond, either orally or in writing, to the authority initially imposing the discipline." (*Id*. at p. 215.) In the present case, Mendez concedes that the Department afforded her a pre-termination hearing, but she contends the Department violated *Skelly* by causing the hearing to end prematurely. She contends further that the Commission and the trial court both erred by denying her a remedy for this alleged violation of her due process rights.

#### A. Additional Background

On January 14, 2020, the Department held a noticed hearing, where Mendez was afforded the opportunity to respond to the Department's notice of its intent to terminate Mendez's employment. When the hearing convened, Mendez, her counsel, and County Counsel appeared before a hearing officer. Mendez's counsel wanted to tape-record the hearing, but County Counsel rejected the request after consulting with a supervisor. A dispute ensued, which led the hearing officer to call for a recess. Mendez and her counsel did not return to the hearing after the recess. Subsequently, the hearing officer provided Mendez an opportunity to submit additional information in writing. Mendez did not provide additional information or request an alternative course of action.

During Mendez's appeal before the Commission, the parties submitted conflicting declarations about the impetus for the dispute that brought the *Skelly* hearing to an abrupt and premature end. According to the Department's hearing officer, Mendez's attorney had an outburst, which included directing an expletive at County Counsel. But Mendez's attorney blamed his opponent, claiming that County Counsel repeatedly interrupted him and then lost his temper and called Mendez's attorney an imbecile. Mendez was the only witness who testified about this matter at the Commission hearing. Mendez testified that the *Skelly* hearing was " 'aborted' " after a facetious interchange, but she did not provide any "specifics" about the matter.

In her mandate petition, Mendez alleged that the Department denied and interfered with her constitutional right to a *Skelly* hearing by causing the hearing to end prematurely. She alleged further that the Commission failed properly to consider and analyze evidence of the Department's *Skelly* violation. According to Mendez, this evidence proved that her employment termination was retaliatory and pretextual because it shows that the Department was in such a hurry to fire her that it could not be "bothered to comply with its legal obligations."

Rejecting Mendez's contentions, the trial court affirmed the Commission's implicit finding that no *Skelly* violation had occurred.[2] The record showed that "Mendez was given a right to present evidence, orally and

---

[2] The Commission found that, when the Department provided Mendez with notice of its intent to dismiss her, it also provided her with a " '*Skelly* packet' " of materials upon which it based its decision, including a copy of Abalos's report. The Commission also found that a *Skelly* hearing was scheduled and "began," but was aborted. It found evidence of unprofessional conduct by both County Counsel and Mendez's counsel, and stated that "[a]crimony" between the two men was also evident during the hearing.

13

in writing, and neither the refusal to tape record the hearing or the purportedly unprofessional conduct by County Counsel impeded that right (although it may have created an unpleasant environment)." And, the court found, Mendez failed to cite any authority supportive of her position that these factual circumstances violated *Skelly*. The court also observed that even if a *Skelly* violation had occurred, the remedy would be backpay damages for the period from the date of actual termination until a full hearing was held before the Commission. (Citing *Barber v. State Personnel Bd.* (1976) 18 Cal.3d 395, 402 (*Barber*).) In her prayer, Mendez did not seek damages specific to this time period. She requested reinstatement and full backpay, which is not an available remedy for a *Skelly* violation, the court found.

### B. Analysis

Mendez contends the trial court erred by ignoring undisputed evidence that "misconduct" by County Counsel interfered with her constitutional right to a full and fair *Skelly* hearing. As discussed, the evidence was not undisputed and the trial court did not ignore it. Instead, the record shows that the court based its ruling on the weight of the evidence and Mendez's failure to cite any authority entitling her to relief. On appeal, Mendez again fails to cite pertinent authority. And her contention that undisputed facts entitle her to relief mischaracterizes the record.

Mendez also contends that the trial court erred by finding that she waived her right to *Skelly* damages. Again, that is not what the court found. The court pointed out correctly that a *Skelly* error would not entitle Mendez to reinstatement of her employment. (*Barber*, *supra*, 18 Cal.3d at p. 402.) The remedy for a *Skelly* violation is backpay damages for the period that the discipline was wrongfully imposed, which means the period from the date of

14

actual discipline to the time that the discipline is upheld at a proper hearing. (*Barber*, at p. 402.) Mendez's mandate petition did not include a request for backpay damages for the discrete period when a *Skelly* violation allegedly occurred. Instead, her only pleaded theory was that the alleged violation proved that the Department's stated grounds for terminating Mendez's employment were pretextual. But since the trial court correctly concluded Mendez failed to establish a *Skelly* violation, the issue of damages is, in any event, moot.

## IV. Mendez's Right to Accommodations

Mendez contends the judgment must be reversed because the trial court and the Commission ignored evidence that the Department refused to make accommodations for her disability.

### A. Additional Background

As discussed, Abalos interviewed Mendez about her timecard discrepancies on August 16, 2019. On August 19, Mendez was seen by a Marriage and Family Therapist who provided her with a letter stating: "Michelle Mendez was seen in my office on 8/19/19. She is unable to work effective 8/19/19– 9/19/19 for mental health reasons due to continuing workplace stress. If you have any questions, or concerns please feel free to contact me." Mendez took a leave of absence from her work later that month.

In October 2019, Mendez's therapist provided another letter stating that Mendez was in his care for "Acute stress disorder" caused by ongoing workplace stress and that she was unable to "work effectively as of 8/19/19." In a February 1, 2020, letter, Mendez's therapist stated that Mendez continued to receive treatment for her acute stress disorder related to workplace stress and that she would be "unable to return to her work duties" until June 1, 2020.

On February 6, 2020, Mendez received an email regarding the status of her disability claim from Tracy Ford, a program manager with the County's Human Resources Department. Ford notified Mendez that her documentation of her disability was not sufficient because it did not describe adequately the impairment limits Mendez was suffering or how they impacted Mendez's ability to perform essential job functions. Ford stated that she would be sending a supplemental medical questionnaire to Mendez's physician to help the County better understand work restrictions that may need accommodation. On February 13, Ford sent Mendez a follow-up email, which stated that Ford had been informed that Mendez was terminated from her employment. Ford notified Mendez that she would close her file "at this time," but she invited Mendez to reach out if she returned to County employment and required an accommodation.

In her mandate petition, Mendez alleged that the Department violated the California Fair Employment and Housing Act (FEHA) and the Americans With Disabilities Act (ADA) by terminating Mendez's employment without engaging in a " 'mandatory interactive process' " to attempt to accommodate her disability. Mendez alleged further that the Commission failed to consider and analyze properly evidence that the Department failed to engage with her about accommodating her disability. According to Mendez, the Commission "brushed this evidence aside" because it concluded that Mendez had other recourses for violations of the FEHA and ADA. Mendez alleged that the Commission erred because it should have recognized that the Department's failure to engage in an interactive process with Mendez was "directly relevant to the pretextual nature of the termination because it shows that [the] Department was in such a hurry to terminate [her] employment that it could not even be bothered to comply with its legal obligations."

16

The trial court found that Mendez's disability claim did not require reversal of the Commission's decision. For one thing, Mendez's contention that the Commission failed to consider this matter was not true; the Commission admitted evidence pertaining to Mendez's disability claim and expressly addressed the matter in its decision. Further, evidence before the Commission showed that Mendez's disability claim and accommodation request "post-dated the conduct in question and the internal affairs interview." In light of this evidence, the court found that "the Commission did not abuse its discretion by upholding Mendez's termination notwithstanding her unrelated disability claim."

### B. Analysis

Mendez contends that the "trial court's finding dismissing the import of [the] Department's failure to accommodate Mendez's disability is fundamentally erroneous." The court did not dismiss the importance of this issue. It concluded that the Commission acted within its discretion by upholding an employment termination decision that had nothing to do with Mendez's request for a disability accommodation.

Mendez insists that the Department violated an independent and ongoing duty to engage in an interactive process with her about accommodating her disability. (Citing *Swanson v. Morongo Unified School Dist.* (2014) 232 Cal.App.4th 954, 971–972: *Moore v. Regents of University of California* (2016) 248 Cal.App.4th 216, 243–244; *Claudio v. Regents of University of California* (2005) 134 Cal.App.4th 224, 243.) In contrast to the authority upon which Mendez relies, the present appeal does not arise from a civil action alleging employment discrimination on the basis of a known disability. Mendez seeks judicial review of an administrative ruling

17

terminating her public employment for reasons that are wholly unrelated to her stress-related disability.

In upholding Mendez's dismissal, the Commission made a finding that it was "not within the province of the Commission to adjudicate whether the County complied with legal obligations under the ADA and/or FEHA." In concluding that the Commission acted within its discretion, the trial court made a finding that Mendez did not suffer a disability and/or request a disability accommodation from the Department until *after* she engaged in conduct that resulted in her termination. This finding is supported by substantial if not undisputed evidence. We add that Mendez has never alleged that she was terminated *because of* the acute stress-related disability that surfaced after she was investigated and questioned about misreporting her time. We do not question that becoming the subject of an internal affairs investigation of this nature would be stressful and could even cause a disability. But Mendez cites no authority supportive of her legal theory that she is entitled to reinstatement if the Department failed to interact with her adequately about accommodating a disability that arose after she engaged in the conduct that justified terminating her employment.

## V. Mendez's Right to Present Evidence Regarding the Department's Treatment of Similarly Situated Employees

Mendez contends the Commission denied her constitutional due process by precluding her from introducing evidence that similarly situated employees of the Department were not terminated for violating the Department's timekeeping policies. According to this argument, the Commission denied Mendez due process by (1) sustaining objections to a subpoena that Mendez served on the Department during her administrative appeal, and then (2) precluding Mendez from cross examining a Department

18

witness who was permitted to testify that other employees have been disciplined for timekeeping violations.

## A. Additional Background

During her administrative appeal, Mendez served a subpoena duces tecum on the Department seeking "documents 'sufficient to identify disciplinary action taken by [the Department] against any of it employees for alleged misconduct similar to the misconduct cited . . . as a basis for its decision to terminate Ms. Mendez's employment.' " Mendez requested documents showing " 'the names of the employees subject to discipline, the nature of the alleged misconduct, the dates of the alleged misconduct, and the form of discipline imposed.' " The Department objected to the subpoena, arguing it was untimely and that its employees had constitutionally protected privacy rights in their personnel files. On June 2, 2020, the Commission heard argument on the matter and then sustained the Department's objections.

During the evidentiary hearing before the Commission, the Department called Assistant Chief MacAskill as a witness. Under direct examination, MacAskill testified that she was aware of other "instances" when the Department intended to terminate an employee for "time card related issues," but the matters "may have been resolved in another way." Under cross-examination, MacAskill clarified that she recalled instances when the Department intended to terminate employees for timekeeping violations, but the employees retired or resigned instead. When Mendez's counsel asked for the names of these other employees, the Department's counsel instructed MacAskill not to answer the question because it called for confidential information. The two attorneys debated briefly whether the

19

identities of other employees should be disclosed; this debate ended when Mendez's counsel stated that she would "move on."

On July 17, 2020, several days after the Commission announced its decision to uphold the Department's termination of Mendez's employment, Mendez filed a Public Records Act request with the County seeking documents and other information regarding appeals from disciplinary decisions that had been filed with the Commission since January 2015. The request contained 24 broadly-worded categories, which would have included documents pertaining to appeals from employee discipline decisions by the Department that involved violations of timekeeping policies. In late July, the County produced "disclosable" documents pursuant to Mendez's request. A dispute ensued, which County Counsel attempted to resolve by providing Mendez's counsel with additional information. In an August 11, 2020, letter, County Counsel stated that, aside from Mendez's case, appeals heard by the Commission during the specified period did not involve disciplinary action against an employee for "overstating in timesheets the amount of time actually worked."

In her mandate petition, Mendez alleged that the Commission "unfairly and improperly" facilitated the Department's concealment of "fatally damaging" evidence establishing that the Department has not disciplined any other employee for timecard violations. She based this claim on allegations that (1) her subpoena was reasonable and sought relevant evidence; (2) she was precluded from cross-examining MacAskill about her direct testimony that "the Department had previously disciplined other (unnamed) employees for similar violation"; and (3) the Department admitted that it had never terminated any other employee for a time-keeping violation in its response to Mendez's Public Records Act request.

20

The trial court found that the Commission acted within its discretion by denying Mendez the right to compel the disclosure of "the names and disciplinary records of employees who were not part of the proceeding." The court reasoned that an employee's constitutionally protected right to privacy applies to subpoenas in administrative proceedings, and that balancing those privacy rights against Mendez's right to potentially relevant documents was a matter of discretion. (Citing *Sehlmeyer v. Department of General Services* (1993) 17 Cal.App.4th 1072.) Concluding that the Commission did not abuse its discretion under the circumstances presented, the court found, among other things that: (1) Mendez's subpoena was overbroad; (2) third-party employees had a strong privacy interest in their personnel records and had not been served with notice of the subpoena; and (3) the information that Mendez sought was relevant to her disparate treatment claim, but she had the opportunity to examine the Department's witnesses and to present her own witnesses who testified about the Department's timekeeping policies and practices.

The trial court also rejected Mendez's contention that the Commission precluded her counsel from cross-examining MacAskill. This allegation was not supported by the record, the court found.

**B. Analysis**

Mendez fails to show that the Commission erred by sustaining objections to her subpoena. As Mendez contends, disparate treatment of similarly situated employees may be relevant to prove pretext in an employment discrimination case. (*Wills v. Superior Court* (2011) 195 Cal.App.4th 143, 172 (*Wills*).) But, contrary to Mendez's appellate arguments, neither the Commission nor the trial court found otherwise.

21

The Commission sustained the Department's objections to Mendez's subpoena "on the grounds of untimeliness and the constitutional privacy rights of employees with respect to their personnel files." Both objections were valid. Under our state constitution, citizens have a privacy interest in precluding the "dissemination or misuse of sensitive and confidential information." (*Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 35.) In an administrative proceeding, as in civil litigation, when a party seeks to compel disclosure of third-party confidential information, the privacy rights of the third party must be protected by balancing them against the party's right to relevant discovery. (*Sehlmeyer, supra*, 17 Cal.App.4th at pp. 1078–1079.) Moreover, "before confidential third party personal records may be disclosed in the course of an administrative proceeding, the subpoenaing party must take reasonable steps to notify the third party of the pendency and nature of the proceedings and to afford the third party a fair opportunity to assert her interests by objecting to disclosure, by seeking an appropriate protective order from the administrative tribunal, or by instituting other legal proceedings to limit the scope or nature of the matters sought to be discovered." (*Sehlmeyer*, at pp. 1080–1081.)

Substantial evidence supports the trial court's finding that the Commission acted within its discretion by concluding that the privacy interests of nonparties outweighed Mendez's right to discover potentially relevant evidence contained in the personnel files of nonparty employees. Mendez was able to support her claim that the Department did not discipline similarly situated employees through her questioning of employee witnesses who she called to testify at her appeal hearing, and by cross-examining the Department's witnesses. The Commission could have concluded reasonably that the probative value of additional evidence that may have been garnered

from personnel records did not justify invading the strong privacy rights of third parties who had no stake in the proceeding. Moreover, as the trial court found, the introduction of this additional evidence "would have required inquiry as to the similarities between the cases, including whether the same decision makers were involved, requiring substantive time and raising Evidence Code [section] 352 concerns." (See e.g. *Wills*, *supra*, 195 Cal.App.4th at p. 172 [for purposes of establishing disparate treatment, "[a]nother employee is similarly situated if, among other things, he or she ' "engaged in the same conduct without any mitigating or distinguishing circumstances" ' "].)

In her appellate briefs, Mendez does not dispute that she was permitted the opportunity to elicit disparate treatment evidence from witnesses who testified before the Commission. She only repeats her claim that the Commission precluded her from cross-examining MacAskill. As the trial court found, "Mendez fails to demonstrate that her counsel was precluded from questioning MacAskill." The only question that the Department's counsel instructed MacAskill not to answer asked for the names of employees whom the Department had considered disciplining because of timecard violations. Mendez's counsel did not request a ruling from the Commission regarding that specific issue. Even if the Commission's silence could be construed as affirming the Department's objection, Mendez was not precluded from questioning MacAskill about these incidents, but only from discovering the names of the individuals involved.

Finally, Mendez contends that evidence pertaining to her Public Records Act request compels us to reverse the Commission's decision. Mendez acknowledges that she did not file her Public Records Act request until after the administrative hearing was completed, but she contends that

23

the County's response to her request is admissible proof that the Commission violated her due process right to a fair hearing. (Citing *Windigo Mills v. Unemployment Ins. Appeals Bd.* (1979) 92 Cal.App.3d 586, 596.) This convoluted due process argument rests on the following contentions: first, the Department responded to Mendez's Public Records Act request by finally admitting that it has never terminated another employee for violating its timekeeping policies; second, the Department's admission of this fact proves that there were no documents responsive to Mendez's subpoena; third, the fact that there were no documents responsive to the subpoena proves that the Department's privacy objection was "completely disingenuous"; and finally, the fact that the Commission sustained the Department's disingenuous objection proves that the Commission improperly facilitated the Department's concealment of the fact that it has never disciplined anyone but Mendez for violating timekeeping policies.

We disagree with Mendez's characterization of her Public Records Act evidence, and we decline to adopt her unreasonable inferences. First, this evidence is irrelevant to our review of the Commission's discovery ruling because Mendez did not even file her Public Records Act request until after her administrative appeal was denied. Second, this evidence does not justify an inference that the Department's objection to Mendez's subpoena was disingenuous. Contrary to Mendez's appellate argument, the Department did not admit anything by responding to the Public Records Act request because it was the County rather than the Department upon whom the request was made, and that request sought documents pertaining to appeals filed with the Commission, rather than documents from the confidential personnel files of Department employees. In any event, the crux of this due process claim is that Mendez was precluded from presenting evidence that the Department

24

had not terminated other employees for misreporting their time. The record shows otherwise. Under cross-examination by Mendez's counsel, MacAskill testified that there were other instances in which the Department intended to terminate employees for misreporting their time, but the matters were resolved when the employees retired or resigned.

## VI. Mendez's Right to a Fair Hearing Before the Commission

Mendez contends that she was denied due process because the Commission was biased against her and disregarded her rights during the administrative hearing.

### A. Additional Background

In her mandate petition, Mendez alleged that the Commissioners' conduct at the administrative hearing "consistently evidenced [the Commission's] bias, inattentiveness, dereliction of its obligations to Mendez and indifference to Mendez's fundamental vested right." This conduct allegedly included denying Mendez sufficient time to present her case, deliberately failing to pay attention to Mendez's evidence, improper examining of a witness, and drawing adverse inferences from Mendez's assertion of her Fifth Amendment rights.

The trial court concluded that the Commission provided Mendez a fair trial, there was no error in the way the hearing was conducted, and the Commission was not inattentive or biased against Mendez. Each of these conclusions was supported by findings of fact based on the trial court's independent review of the hearing record.

In concluding that Mendez received a fair hearing, the court found that Mendez was afforded "a full opportunity to present her case," and that the Commission acted within it authority by excluding irrelevant and repetitious evidence. The court also found that Mendez misstated the record in arguing

that the Commissioners told her that she could not have more than one day for her hearing. Rejecting Mendez's critique of the way the hearing was conducted, the court found, among other things that the Commission had authority to conduct an informal hearing. During a brief interchange, a commissioner asked an unsworn witness a question about the Department's timekeeping system, but the Commission did not rely on that information to reach its decision, making any error harmless.

In rejecting Mendez's contention that Commissioners did not pay attention during the hearing, the court credited declarations that had been submitted by the Commissioners instead of a declaration submitted by Mendez's sister. Further, the court's independent review of the hearing transcript showed that the Commissioners "were engaged and asked proper questions in an appropriate manner." The court also made an express finding that the Commission was "justified in asking counsel to get to the point quickly with witnesses and then to move on," citing a specific example in the transcript.

In concluding that the Commission was not biased against Mendez, the court found, among other things, that the questions that Commissioners asked witnesses evinced a genuine effort to understand the case. The court also found no evidence to support Mendez's contention that the Commissioners drew an adverse inference from the fact she had exercised her Fifth Amendment rights at the internal affairs interview. In reaching this conclusion, the court pointed out that the Commission made an express finding that Mendez's invocation of these rights during the Abalos interview was not insubordination.

## B. Analysis

On appeal, Mendez contends that the Commission's conduct during the administrative hearing "consistently evidenced" bias, inattentiveness, and disregard for Mendez's fundamental rights. "When due process requires a hearing, the adjudicator must be impartial." (*Haas v. County of San Bernadino* (2002) 27 Cal.4th 1017, 1025.) This due process requirement applies at adjudicative proceedings conducted by an administrative body. (*Morongo Band of Mission Indians v. State Water Resources Control Bd*. (2009) 45 Cal.4th 731, 737.) A due process violation can be established by proof of actual bias or by showing that the specific situation created too high a probability of bias. (*Ibid*.) But an adjudicator with no financial interest in the outcome is "presumed to be impartial." (*Ibid*.)

Mendez purports to support her claim of bias with a list of inflammatory accusations accompanied by string citations to the record. We are not persuaded by this subjective critique of the Commissioners' conduct. To begin with, Mendez ignores the trial court's findings of fact, and evidence supporting them. Arguments in an appellant's brief that are unsupported by adequate factual or legal analysis may be deemed forfeited. (*Singh v. Lipworth* (2014) 227 Cal.App.4th 813, 817.) Furthermore, Mendez relies heavily on a declaration by her sister that was filed in support of her mandate petition. As discussed, the trial court was not persuaded by that declaration. "[T]he testimony of a witness which has been rejected by the trier of fact cannot be credited on appeal unless, in view of the whole record, it is clear, positive, and of such a nature that it cannot rationally be disbelieved." (*Beck Development Co. v. Southern Pacific Transportation Co.* (1996) 44 Cal.App.4th 1160, 1204.) Finally, Mendez continues to mischaracterize the record. For example, the trial court made an express

finding that the Chairperson of the Commission "did not state, as Mendez claims, that the hearing would only last one day." Mendez ignores this finding and repeats her erroneous claim in her appellate brief. She contends further, that the Commissioners informed her they did not "care" if she had time to present her case. Mendez's record citations do not support these factual representations. With these considerations, we affirm the trial court's findings that the Commission afforded Mendez a fair hearing and was not biased against her.

## VII. Mendez's Right to Findings Regarding Material Issues

Finally, Mendez contends that the decision by the Commission is "unsupported and arbitrary" because it "fails properly to evaluate Mendez's evidence." This conclusory argument eschews any substantive discussion of the Commission's written findings of fact and decision. Furthermore, Mendez's contention that her evidence was not properly evaluated is contradicted by her admission that the judgment upholding her termination is supported by substantial evidence.

Mendez intimates that the Commission's decision is deficient because it is not supported by findings, citing *Topanga Assn. for a Scenic Community v. County of Los Angeles* (1974) 11 Cal.3d 506. As we have discussed, in a mandate proceeding filed under section 1094.5, the court reviews an agency decision to determine if it is supported by the agency's findings and if those findings are supported by the evidence. *Topanga* holds that "implicit in section 1094.5 is a requirement that the agency which renders the challenged decision must set forth findings to bridge the analytic gap between the raw evidence and ultimate decision or order." (*Topanga*, at p. 515.) Because the purpose of these findings is to "direct the reviewing court's attention to the analytic route the administrative agency traveled from evidence to action,"

section 1094.5 precludes the reviewing court from speculating "as to the administrative agency's basis for decision." (*Topanga,* at p. 515.)

More recently, our Supreme Court has clarified that the agency's findings "do not need to be extensive or detailed." (*Environmental Protection Information Center v. California Dept. of Forestry & Fire Protection* (2008) 44 Cal.4th 459, 516.) " ' "[W]here reference to the administrative record informs the parties and reviewing courts of the theory upon which an agency has arrived at its ultimate finding and decision it has long been recognized that the decision should be upheld if the agency 'in truth found those facts which as a matter of law are essential to sustain its . . . [decision]." ' " (*Ibid.*)

In the present case, after the Commission denied Mendez's administrative appeal, it issued a 10-page decision containing detailed findings, which establishes the "analytic route the administrative agency traveled from evidence to action." (*Topanga, supra,* 11 Cal.3d at p. 515.) Mendez's contrary contention is without merit.

## DISPOSTION

The judgment is affirmed. Costs are awarded to the respondents.


TUCHER, P.J.

WE CONCUR:

PETROU, J.
RODRÍGUEZ, J.


*Mendez v. Civil Service Commission, County of San Mateo et al.* (A163271)

29